UNITED STATES of America,
Plaintiff–Appellee,

v.

Frank Joseph LACH,
Defendant–Appellant.

No. 88–5411.

United States Court of Appeals,
Eleventh Circuit.

June 13, 1989.

Mark King Leban, Law Offices of Mark King Leban, P.A., Miami, Fla., for defendant-appellant.

Thomas McNulty, U.S. Dept. of Justice, Miami Strike Force, Miami, Fla., Frank J. Marine, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before VANCE and COX, Circuit Judges, and KING\*, Chief District Judge.

PER CURIAM:

Frank Joseph Lach appeals from his conviction on two counts of criminal contempt for willfully disobeying two separate court orders to testify in grand jury proceedings, in violation of 18 U.S.C. § 401 (1982). We affirm.

## I.

In February 1986, Lach was convicted for conspiring with Sam Urbana, owner of a Miami, Florida pawn shop known as "A New Hocke Shoppe," to transport stolen property in interstate commerce in violation of 18 U.S.C. §§ 371 and 2314 (1982), and, subsequently, was sentenced to five years imprisonment. On the date of his sentencing, April 23, 1986, Lach appeared before a federal grand jury (FGJ 86–4) in the Southern District of Florida to answer questions concerning the crime for which he had been convicted.[1] During his appearance, Lach was advised, *inter alia*, that he had been convicted of conspiring to transport stolen property in interstate commerce, and that, because Mancini had obtained an immunity compulsion order from the Attorney General pursuant to 18 U.S.C. § 6002 (1982), he no longer had a fifth amendment right to refuse to testify before the grand jury. Thereafter, the following questioning occurred:

\* Honorable James Lawrence King, Chief U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Prior to Lach's appearance, Lach's attorney was provided with a letter from Assistant U.S. Attorney Chris Mancini, which identified the following five areas of inquiry:

    (1) Telephone number (305) 595–6515 is subscribed to by Sharon Seidman, 13200 North Calusa Club Drive, Miami, Florida. That address is the same address listed by Lach as a residence before Lach went to jail. Was the above-listed phone ever used in any way in connection with the crime for which Lach was convicted?

    (2) Who lived, owned, or in any way was associated with the 5945 Ravenswood Road, Ft. Lauderdale, Fla. 33312 address listed by Lach on the Armand Dinofrio driver's license

Q. Okay. Now, is it your intention today to answer questions about your involvement in the crime for which you were convicted?

A. I'm going to appeal.... I'm taking the fifth regarding any questions you have in my case 'cause I have an appeal coming.

Q. ... Whether or not you have an appeal pending is irrelevant at this point in time. I have obtained from the Attorney General an immunity compulsion order. That means that you must, if directed to do so, answer questions about your involvement in the crime.

   .     .     .     .     .

Q. Now that I've explained that to you, is it your intention nonetheless to refuse to answer questions that I pose to you?

A. I refuse.

Q. And on what grounds do you refuse to answer those questions?

A. That it might tend to incriminate me.

Q. And you understand your fifth amendment right has been removed?

A. Yes.

Q. So I am telling you—and we're going through this formality for the record really—that you no longer have a fifth amendment right. You can't refuse on those grounds. Do you understand that?

A. Yes.

he obtained from the State of Florida? What aliases did Sam Urbana use?

(3) What role did Al Platt and Sam Urbana play in obtaining the various items which Lach provided for Frank Culotta's use during the planning and execution of the robbery/interstate shipment of the ring in question? Who provided the funds therefore?

(4) A New Hocke Shoppe will be the subject of various questions as to it's [sic] use, ownership, [and] Lach's connection with the individuals associated with that business.

(5) What was the relationship between Madeline Rubin [the robbery victim's daughter] and Al Platt and Sam Urbana?

Although the letter stated that these questions were "only a partial listing" of the subject areas, each question related to the crime for which appellant had been convicted.

Q. Now, I proposed to your attorney a series of questions. Did you get a copy of those questions?

A. Yes.

Q. All right. Just for the record, I'm going to ask you a question just so the record is clear that I gave you an opportunity to answer questions and you refused. If you want to answer them, I welcome your answers. I'm not telling you not to. But just for the record, let me ask you these questions. What involvement did Sam or Bonna (phonetic) [i.e. Sam Urbana] have in the crime for which you were convicted?

A. I must decline to answer that question because it might tend to incriminate me.

Q. And that will be your answer to all questions that I pose to you today?

A. Yes. I'm invoking the fifth.

Q. Okay. Fine. Then for formality purposes, Mr. Lach, I must at this point ask the grand jury foreperson to order you to answer the questions that I posed to you today.

THE FOREMAN: Mr. Lach, you are so directed to answer all questions posed to you by the U.S. Attorney in this matter.

THE WITNESS: I'm taking the fifth.

THE FOREMAN: Do you refuse to answer those questions?

THE WITNESS: Yes.

Immediately following his refusal to testify, Lach, his attorney, and Mancini appeared before a district judge on the government's motions to compel his testimony and to hold Lach in civil contempt. Mancini informed the court of Lach's refusal to testify and gave the court a written motion to compel Lach's testimony through a grant of immunity pursuant to 18 U.S.C.

§§ 6002–03. In response to the government's motions, Lach's attorney advised the court that Lach understood both the government's immunity request and that he could be held in contempt for refusing to testify. The attorney also stated that Lach would refuse to testify regardless of the court's ruling on the motion to compel. Subsequently, Lach himself informed the court of his intention to refuse to testify, notwithstanding the threatened contempt punishment.

Following Lach's pronouncements, the court *orally* granted Lach immunity pursuant to 18 U.S.C. §§ 6002–03 [2] and asked Mancini whether Lach would be returned to the grand jury. Mancini replied: "Judge, we have talked about that. It is a waste of everybody's time. Mr. Lach absolutely is not going to testify." Lach did not contest Mancini's response. The court subsequently adjudged Lach in civil contempt and ordered Lach confined until the grand jury term expired (June 4, 1987) or until he purged himself of contempt by testifying.

In March 1986, the Miami Organized Crime Strike Force obtained a court order authorizing interceptions of conversations between Sam Urbana and others at A New Hocke Shoppe. During the course of the two-month surveillance, evidence obtained both before and after Lach's April 23, 1986, grand jury appearance indicated that Urbana may have endeavored to obstruct justice by attempting to induce Lach to testify falsely or to refrain from testifying before the grand jury. In late May 1986, the Strike Force initiated an investigation before another grand jury, FGJ 85–5, into crimes that were the subject of the electronic surveillance. The investigation included an inquiry into Urbana's possible obstruction of justice.

2. The court specifically stated:

[T]he Court is satisfied that under Title 18 of the U.S.Code, Section 6002, all matters having been undertaken necessary by the Government to achieve the appropriate immunity provisions under 6002 and 6003, that the defendant would be ordered by this Court to give testimony or provide the information which he refuses to give or to provide, on the basis of his privilege against self-incrimination, as to all matters about which he may be interrogated before the Grand Jury.

However, no testimony or other information compelled by this order may be used against Frank Lach in any criminal case, except a prosecution for perjury or giving a false statement or otherwise failing to comply with this order....

The court never committed its oral grant of immunity to writing.

Pursuant to a writ of *habeas corpus ad testificandum,* Lach appeared before FGJ 85–5 in July 1986. Prior to Lach's appearance, Lach's attorney was informed, *inter alia,* that an electronic surveillance of persons other than Lach had occurred and that the government intended to question Lach regarding Urbana's possible obstruction of justice concerning (1) Lach's appearance before FGJ 86–4, (2) the crime for which Lach had been convicted, and (3) criminal activities involving Urbana and others about which Lach had not been questioned on April 23, 1986. The attorney additionally was informed that the government was authorized to seek immunity for Lach.

Appearing before FGJ 85–5, Lach asserted his privilege against self-incrimination and refused to answer questions about Urbana, including whether Urbana in any way endeavored to influence him to refuse to testify or to testify falsely before FGJ 86–4. Thereafter, the government applied to the district court for an order granting immunity and compelling Lach to testify. Following a hearing on the government's application, the district court granted Lach immunity pursuant to 18 U.S.C. §§ 6002–03 and issued a written order compelling Lach to testify before FGJ 85–5. Immediately thereafter, Lach appeared before the grand jury. The prosecutor read the court's order compelling Lach to testify under a grant of immunity, and advised Lach that he no longer had a fifth amendment privilege to refuse to testify. Asserting his fifth amendment privilege, however, Lach refused to answer the same questions he previously had refused to answer, including whether Urbana had endeavored to influence his testimony before FGJ 86–4.

On August 13, 1986, the government filed a motion to compel Lach to testify. Lach opposed the motion, arguing, *inter alia,* that the government was abusing the grand jury process by seeking successive civil contempt citations for his refusal to testify about the same area of inquiry that allegedly was the gravamen of the earlier contempt judgment. In response to Lach's assertions, the government maintained that the FGJ 85–5 investigation was separate from, and broader in scope than, the investigation before FGJ 86–4. Following oral argument on the government's motion, the court issued an order compelling Lach to testify.

On August 26, 1986, Lach again appeared before FGJ 85–5. Acknowledging his understanding that the court had granted him immunity to testify and asserting his fifth amendment privilege, Lach again refused to testify. Lach then was excused from the grand jury.

The following day, the government petitioned to have Lach held in civil contempt pursuant to 28 U.S.C. § 1826 (1982). After a hearing on the government's motion, the court concluded that FGJ 85–5 was conducting a different inquiry than FGJ 86–4 and adjudged Lach in civil contempt for his refusal to testify. Lach was ordered confined until either the expiration of the term of FGJ 85–5 or until Lach purged himself of contempt by testifying.

Lach never appeared again before FGJ 86–4 or FGJ 85–5 to purge his civil contempt judgments. In July 1987, FGJ 85–5 issued an indictment charging Lach with two counts of criminal contempt for his refusal to testify before the grand juries. Lach subsequently moved to dismiss the indictment on various grounds, including alleged abuse of the grand jury process, double jeopardy, and failure of the district court to issue a signed immunity order on April 23, 1986, in connection with Lach's refusal to testify before FGJ 86–4. Denying the motion, the court rejected Lach's double jeopardy and grand jury abuse claims, concluding that it was "unrefuted" that the two grand jury investigations concerned different matters. The court additionally concluded that the court's failure to issue a written order of immunity in connection with the proceeding before FGJ 86–4 was immaterial since Lach had been immunized "in any event."

Following a bench trial, Lach was found guilty on both counts of criminal contempt and sentenced to forty-two month terms of imprisonment on each count of contempt, to run consecutive to each other and to

Lach's five year sentence for conspiring to transport stolen property.

## II.

Lach presents three issues on appeal. First, he asserts that his criminal contempt convictions must be reversed on grounds that the government did not lawfully secure his attendance before either grand jury. Specifically, Lach claims that his compelled appearance before FGJ 86–4 was unlawful because the district court did not issue a written order granting him immunity pursuant to 18 U.S.C. §§ 6002–03. Lach also argues that his contempt conviction for refusing to testify before FGJ 85–5 cannot stand because the government secured his appearance through a writ of *habeas corpus ad testificandum*, rather than through a grand jury subpoena. Second, Lach asserts that the district court erred in denying his motion to dismiss the indictment on the basis that the two counts of contempt violate double jeopardy or constitute multiplicitous pleading.[3] Finally, Lach contends that the district court abused its discretion in sentencing Lach to consecutive forty-two month terms of imprisonment on each count of contempt.

A. *Lawfulness of Lach's Appearance Before FGJ 86–4 and FGJ 85–5*

Lach initially asserts that his criminal contempt convictions must be reversed on grounds that the government did not lawfully secure his attendance before either grand jury. With respect to FGJ 86–4, he argues that his "compelled" appearance was unlawful because the district court did not issue a written order granting him immunity pursuant to 18 U.S.C. §§ 6002–03 and ordering him to testify.

Section 6003, 18 U.S.C., empowers district courts to grant immunity to any grand jury witness who refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in such proceedings.[4] The grant of immunity is effective once "communicated" to the witness. *See* 18 U.S.C. § 6002. A written order is not required, *see United States v. Leyva*, 513 F.2d 774, 776 (5th Cir.1975);[5] instead, it is sufficient, for purposes of conferring immunity, if the person unequivocally conveys to the witness the fact that immunity has been granted. If, after immunity has been granted, the witness persists in his refusal to testify, the court may impose civil and/or criminal contempt penalties for that refusal.

In the present case, the district court, responding to the government's motion to compel Lach to testify with immunity before FGJ 86–4, orally granted Lach immunity pursuant to 18 U.S.C. §§ 6002–03 (1982). The court clearly explained to Lach the effect of its order, indicating that it effectively would preclude Lach from asserting his privilege against self-incrimination as a basis for refusing to testify and that any information compelled by it could not be used against Lach in any subsequent criminal proceeding other than a prosecution for perjury or contempt. Accordingly, Lach was fully aware of the effect of the order and of the probable consequences of violating that order. Because the order was unequivocal, Lach properly was brought before FGJ 86–4 to

3. Lach also challenges the district court's denial of the motion to dismiss on grounds that the government abused the grand jury process. Lach points to several instances of alleged prosecutorial misconduct as evidence that the grand jury process was abused. We decline to discuss this challenge, however, because we conclude that it is frivolous.

4. In relevant part, 18 U.S.C. § 6003 provides as follows:

In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to ... a grand jury of the United States, the United States district court for the judicial district in which the proceeding is ... held shall issue, ... upon the request of the United States attorney for such district an order requiring an individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in [18 U.S.C. § 6002].

5. The Eleventh Circuit adopted former Fifth Circuit precedent in the en banc case of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

testify and, following his refusal to do so, properly was subjected to penalties for contempt.

In addition to the foregoing challenge, Lach contests his criminal contempt conviction for failure to testify before FGJ 85–5 on grounds that his appearance before that grand jury was not lawfully secured. Specifically, Lach asserts that because his appearance was secured by a writ of *habeas corpus ad testificandum,* rather than a grand jury subpoena, he was not "properly" brought before FGJ 85–5 and, therefore, could not be held in criminal contempt for refusing to testify.[6]

■ Lach's argument is meritless. Although typically an individual's presence before a grand jury is secured by the issuance of a grand jury subpoena, when a prisoner's appearance before a grand jury is sought, issuance of a writ of *habeas corpus ad testificandum* is an appropriate means by which his appearance may be secured. *See United States v. Hayman,* 342 U.S. 205, 220 & n. 35, 72 S.Ct. 263, 273 & n. 35, 96 L.Ed. 232 (1952); *Gilmore v. United States,* 129 F.2d 199, 202 (10th Cir.) (object of writ is to direct custodian of a witness who is incarcerated to bring such witness into court to give testimony), *cert. denied,* 317 U.S. 631, 63 S.Ct. 55, 87 L.Ed. 509 (1942); *Miles v. Evans,* 591 F.Supp. 623, 625 (N.D.Ga.1984) (prisoners may not be brought into court to testify unless writs of *habeas corpus ad testificandum* are issued); *Carmona v. Warden of Ossining Correctional Facility,* 549 F.Supp. 621, 622 (S.D.N.Y.1982) (writ of *habeas corpus ad testificandum* is a proper meth-

od for obtaining a witness' presence in order to elicit testimony before a grand jury); *United States v. Grunewald,* 164 F.Supp. 640, 642 (S.D.N.Y.1958) (witness may be brought before grand jury by writ of *habeas corpus ad testificandum* ). *See generally,* 28 U.S.C. § 2241(c)(5) (1982). Since Lach does not challenge the validity of the writ itself, or the manner in which it was issued and executed, his argument fails.

**B.** *District Court's Denial of Lach's Motion to Dismiss the Criminal Contempt Indictment*

Lach asserts that the district court erred in denying his motion to dismiss the indictment on grounds that the two counts violate double jeopardy or constitute multiplicitous pleading. We must review the district court's denial for an abuse of discretion. *United States v. Ricks,* 817 F.2d 692, 695 (11th Cir.1987); *United States v. Pabian,* 704 F.2d 1533, 1536 (11th Cir.1983).

Lach argues that he should have been charged with only one count of criminal contempt because he allegedly "carved out" a single area of refusal to testify about Sam Urbana in his first appearance before FGJ 86–4 which, he asserts, covered his subsequent appearance before FGJ 85–5. His indictment on two counts of contempt for a purported single contempt, he argues, constituted multiplicitous pleading in violation of the double jeopardy clause. As support for this proposition, Lach principally relies on *United States v. Yates,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957).[7]

---

**6.** Lach does not challenge the validity *per se* of the writ of *habeas corpus ad testificandum* that was used to secure his presence. Instead, he argues that the writ was not the appropriate means by which he could be forced to testify before the grand jury because the writ was directed to "any United States marshal" and the warden of the United States Penitentiary in Terre Haute, Indiana, and not to Lach personally, and the writ, by its express terms, was issued to secure Lach's presence, not his testimony, before the grand jury.

**7.** In *Yates,* the Supreme Court reviewed the Ninth Circuit's affirmance of a defendant's conviction on eleven counts of criminal contempt. The defendant, an executive officer in the Com-

munist Party, had been called to testify during a trial involving allegations that the defendant and thirteen codefendants had conspired to violate the Smith Act, 18 U.S.C. § 2385. Yates refused to answer eleven questions, each of which required her to identify other members of the Communist Party. The district court held Yates in contempt for each refusal to answer and sentenced her to eleven concurrent one year terms of imprisonment. Reviewing the convictions, the Supreme Court framed the principal question presented as "whether the finding of a separate contempt for each refusal constitutes an improper multiplication of contempt." Concluding that it did, the Court stated: "Having once carved out an area of refusal,

*Yates,* however, stands only for the proposition that repeated or serial refusals to answer identical or similar questions in a single proceeding may not be used to establish multiple, separate offenses for what is, in essence, a single, continuing contempt. *See United States v. Ward,* 757 F.2d 616, 618 (5th Cir.1985).

■ The district court concluded, and we agree, that *Yates* is not controlling in this case. Lach's argument is premised on the erroneous assumptions that (1) the focus of his questioning before both grand juries was substantially similar since each centered on activities involving Sam Urbana; and (2) his general refusal to answer questions before FGJ 86–4 sufficiently established his intention to refuse to answer any questions concerning Sam Urbana which might be posed to him in the future. The substance of the two grand jury inquiries differed substantially: Lach was called before FGJ 86–4 to testify as to the trafficking of stolen property in interstate commerce, and was called before FGJ 85–5 to testify as to Urbana's possible obstruction of justice. Furthermore, when called before FGJ 86–4, Lach did nothing more than assert a general refusal to testify. That vague assertion was inadequate to establish Lach's intention to refuse to answer all questions posed to him concerning Sam Urbana.[8] *Cf. United States v. Costello,* 198 F.2d 200, 203–04 (2d Cir.1952).

### C. *Criminal Contempt Sentence*

Lach contends that the district court abused its discretion in sentencing him to forty-two month terms of imprisonment on each count of criminal contempt, with the sentences imposed to run consecutive to Lach's five-year term of imprisonment for his conspiracy conviction. Essentially, Lach objects to the length and to the consecutive nature of the sentences.

■ Section 401, 18 U.S.C., authorizes the district court to punish criminal contempt "by fine or imprisonment, at its dis-

cretion." The sentence imposed by the court will not be disturbed on appeal absent a manifest abuse of discretion. *See United States v. United Mine Workers,* 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). In sentencing one for contempt, the court may take into account a variety of factors, including "the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future." *United Mine Workers,* 330 U.S. at 303, 67 S.Ct. at 701.

■ We conclude that the court did not abuse its discretion in sentencing Lach. The court, after conducting an extensive inquiry into the facts underlying Lach's indictment and criminal contempt convictions, concluded that Lach brazenly and willfully had defied the court's orders to testify with immunity and, accordingly, had to "suffer the consequences" of his acts. The sentences imposed were reasonable and comport with sentences which have been imposed by other courts under similar circumstances. *See Green v. United States,* 356 U.S. 165, 168, 187–89, 78 S.Ct. 632, 634–35, 645–46, 2 L.Ed.2d 672 (1958) (upholding sentence of three years for criminal contempt to run consecutive to a five-year conspiracy sentence); *United States v. Monteleone,* 804 F.2d 1004, 1011–12 (7th Cir.1986) (upholding four-year criminal contempt sentence); *United States v. Papadakis,* 802 F.2d 618, 622–23 (2d Cir. 1986) (upholding five-year criminal contempt sentence); *United States v. Ray,* 683 F.2d 1116, 1123 (7th Cir.1982) (upholding three-year sentence). Moreover, requiring Lach to serve his contempt sentences consecutive to, rather than concurrently with, his term of imprisonment for his conspiracy conviction was not error, considering that sentences for criminal contempt are puni-

---

[Yates] remained within its boundaries in all her subsequent refusals." *Yates,* 355 U.S. at 73–74, 78 S.Ct. at 133.

**8.** We need not decide whether *Yates* is inapplicable on the basis that it, unlike the present case, involved multiple questions posed during the course of a *single* proceeding.

tive in nature and are imposed for the purpose of vindicating the authority of the court. *United Mine Workers*, 330 U.S. at 302, 67 S.Ct. at 700.

For the foregoing reasons, Lach's convictions and sentences are hereby

AFFIRMED.