## In re Subpoena of Michael J. BARNICLE.

### No. C–92–393–L.

United States District Court, D. New Hampshire.

Sept. 30, 1992.

William L. Chapman, Orr & Reno, Concord, N.H., for Michael Barnicle.

U.S. Atty. by Peter Papps and Nancy Hart, Asst. U.S. Attys., Concord, N.H., for U.S.

## ORDER

LOUGHLIN, Senior District Judge.

During the civil trial of *James Censullo v. Brenka Video, et al.,* C. 90–097–L, a witness Michael J. Barnicle, subpoenaed by plaintiff's counsel failed to appear. A bench warrant was issued for his arrest.

In order to address the issue of whether Barnicle should be found in contempt for failing to appear in this court on Monday, July 27, 1992 at 10:00 a.m. some background on the *Censullo v. Brenka Video* case is helpful.

One of the problems that the court and counsel encountered in this case was the following. The plaintiff closed or rested his case at 2:10 p.m. on Monday, July 27, 1992. The defendant commenced the presentation of its evidence the very same day at 2:43 p.m. By failing to appear, the continuity of the plaintiff's case was broken and to a degree the defendant's case as Barnicle testified at 1:47 p.m. on Tuesday, July 28, 1992. Trial had commenced on Tuesday, July 21, 1992.

At a hearing held on September 17, 1992 the government called three witnesses, Gilles Provost, his wife Linda Provost and Attorney James Craig.

Gilles Provost works in corrections; he also has part time employment as a part-time investigator for Gerard St. Jean. In his job as a part-time investigator he serves subpoenas for New Hampshire attorneys. Attorney James Craig, representing Plaintiff Censullo requested Gerard St. Jean to serve a subpoena on Barnicle. St. Jean instructed his employee Gilles Provost to serve Barnicle ,in Lincoln, Massachusetts. Lincoln, Massachusetts falls within the ambit of Federal Rule of Civil Procedure 45(b)(2) as it is approximately 60 to 70 miles from Concord, New Hampshire as Gilles Provost testified. A subpoena must be served at a distance no greater than 100 miles from the district where the trial is held. *Id.*

On Sunday evening, July 26, 1992 at 7:35 p.m. Gilles Provost accompanied by his wife Linda, who went along for the ride traveled to 20 Trapello Road, Lincoln, Massachusetts.

Gilles Provost knocked on a screen door with his wife close beside him. A woman answered his knock and after Gilles Provost asked for Michael Barnicle she yelled Michael. An individual came to the door, both Gilles Provost and his wife Linda made an in-court identification of this individual as Michael Barnicle. Barnicle stated that it should be served on the Boston Globe. Gilles Provost told him that it was for him and Barnicle refused to accept it. Not looking for a confrontation, Gilles Provost put the summons on the porch near

the door together with a check for $68.00. Gilles Provost stated that at one point Barnicle was no more than three to six inches from him.

Linda Provost in essence corroborated her husband's testimony.

At the request of the United State's Attorney's office Mr. and Mrs. Provost watched a program on a Boston Television Channel in which Michael Barnicle appears. Both Mr. and Mrs. Provost without any equivocation whatsoever testified that this was the same individual they observed on July 27, 1992 at his home in Lincoln, Massachusetts, again on Barnicle's television show and again in court on September 17, 1992.

Attorney James Craig testified that he made out the subpoena and also made out a check for $68.00 to Michael Barnicle.

Barnicle was the only witness for the defense. He stated that in the afternoon of July 27, 1992 he was at Cape Cod, Massachusetts. He arrived at his home in Lincoln between 6:30 and 6:45 p.m. He then went to Concord, Massachusetts to procure the video movie *Hook* and did not get home until 8:00 p.m. Barnicle stated that his younger brother Paul, a homicide detective with the Boston Police Department had been at his home, but had left before Barnicle reappeared at 8:00 p.m. He further stated that his brother Paul Barnicle looked like him leaving the inference that it was Paul Barnicle that Gilles Provost talked to, not Michael Barnicle. On Thursday July 23, 1992 Mrs. Censullo had called him requesting his help at the trial.

At the request of defendant's counsel the court had postponed an earlier trial date in order that Barnicle's brother Paul Barnicle, who had other commitments could be available for trial. Neither Michael Barnicle's wife or brother testified at the hearing.

The court candidly can on the evidence rule that Michael Barnicle was served in hand and refused to accept the subpoena. This could be draconian in effect because of a possible further government action. On the other hand the court while not discrediting the testimony of the Provosts, who were honest witnesses can also rule that Michael Barnicle had actual notice of the subpoena, but chose to ignore it.

■ At the risk of being a gobemouche, the court rules that Michael Barnicle had actual notice of the subpoena which he acknowledged in his testimony, but refused to honor it. While not part of the record this court on Monday, July 27, 1992 on more than one occasion requested Deputy Marshall Stephen Shurtleff to have Barnicle present that day even if it meant that he would be physically arrested and transported to New Hampshire. On Tuesday, July 28, 1992 the court was very upset when Barnicle did not appear at 9:30 a.m. Deputy Marshal Shurtleff was once again informed that the court's patience was being sorely tried. Barnicle finally appeared and testified Tuesday afternoon.

Barnicle's attitude was hubristic concerning court proceedings as further evidenced by his in-court remarks that the incident had a circus atmosphere. With regard to his complaints that the subpoena was interfering with a prior charitable event, if he made the court aware of it, he would have been accommodated in this regard. He never had the comity to so inform the court, but chose to ignore not only the subpoena but for a time the court's order. He, to use a hackneyed expression, but one which is most apposite to this case, "Is not above the law."

Federal Rule of Civil Procedure 45(e) states that a "failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued."

Evasion of a deposition subpoena constitutes an obstruction of the administration of justice. A court is entitled to have its orders obeyed. *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). When a witness, litigant or attorney refuses to appear for a deposition or other necessary proceeding, the court must act in order to maintain not only its control over the proceedings but also to effectuate a subsequent resolve

of the entire matter. *Hinds v. Bodie,* 1988 WL 33123 (E.D.N.Y. March 22, 1988.)

■ In sentencing for contempt, a court may take into account the extent of willful and deliberate defiance of the court's order, seriousness of consequences of the contumacious behavior, necessity of effectively terminating defendant's defiance as required by public interest and importance of deterring such acts in the future. *U.S. v. Lach,* 874 F.2d 1543 (11th Cir.1989).

■ Civil contempt is imposed to coerce present or future compliance with an order of the court.... The sanctions of imprisonment and monetary fines are available in both civil and criminal contempt proceedings. However, the imprisonment and/or fine imposed in a criminal contempt proceeding is the culmination of a typical criminal trial in which the contemnor is punished by way of a sentence. In contrast, a civil contempt judgment results in imprisonment or a conditional fine to induce the purging of contemptuous conduct.... Additionally, in a civil contempt case, the court can impose a compensatory fine to make whole the aggrieved. *In Re Kave,* 760 F.2d 343 (1st Cir.1985).

In contempt cases, the trial court has discretion to fashion punishment to fit circumstances. *Hubbard v. Fleet Mortg. Co.,* 810 F.2d 778 (8th Cir.1987).

■ Sanctions for civil contempt may be imposed to coerce obedience to court orders, or to compensate parties pursuing a contempt action for injuries resulting from contemptuous behavior, or both. *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376 (9th Cir.1986).

■ The court has broad discretion to fashion a remedy based on the nature of harm and probable effect of alternative sanctions in a civil contempt proceeding. *Connolly v. J.T. Ventures,* 851 F.2d 930 (7th Cir.1988).

The defendant is found in civil contempt of court. With respect to punishment, there is some mitigation in that the defendant, with recalcitrance finally appeared. Further his testimony when elicited was germane and helpful to the jury. Albeit, his general attitude was contumacious. It is hereby ordered that defendant pay a fine of $1,000.00, $500.00 of which will be suspended provided that he perform ten hours of school community service.

The Court rules as follows on the Government's requests for findings of fact and proposed conclusions of law. Requests # 1, 2 and 3 are granted.

The Court rules as follows on Defendant Barnicle's request for findings of fact. Requests # 1, 3 and 5 are denied. Request # 2 is granted. With respect to request # 4 the Court neither grants nor denies this request because of the following reasons. The Court was understandably concerned about Michael Barnicle's failure to appear on Monday, July 27, 1992 at 10:00 a.m. Unfortunately, off the record the Court inquired of Attorney James Craig if he ever attempted to speak to Barnicle prior to trial. It is the Court's recollection that Attorney Craig made attempts to contact Barnicle just prior to trial without success.