[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 30, 2009
THOMAS K. KAHN
CLERK

No. 09-11947
Non-Argument Calendar

_____

D. C. Docket No. 07-20312-CR-UU

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH FLETCHER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 30, 2009)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Kenneth Fletcher appeals his conviction and sentence for criminal contempt,

18 U.S.C. § 401(3).  After review, we affirm.

## I. BACKGROUND

### A. Fletcher's Prior Drug Conspiracy Conviction

In 2007, a federal grand jury indicted Fletcher and codefendants, Hector Mateo and Wayne Trought, on drug conspiracy charges. In a plea agreement, Fletcher agreed to plead guilty to one count of conspiracy to possess with intent to distribute cocaine and to cooperate with the government in exchange for the dismissal of the two remaining counts against him. In 2008, the district court accepted Fletcher's guilty plea and sentenced him to 37 months' imprisonment.

### B. Trial of Co-defendant Trought

On January 5, 2009, Trought, Fletcher's codefendant, proceeded to trial. On the morning of January 7, 2009, the government provided Fletcher's attorney with a copy of a motion, brought pursuant to 18 U.S.C. §§ 6001 et seq., to compel Fletcher to testify at Trought's trial. The government's motion explained that Fletcher's counsel had indicated that Fletcher would assert his Fifth Amendment rights and would refuse to answer any questions at Trought's trial. Attached to the government's motion was: (1) a letter, dated January 6, 2009, from an Assistant Attorney General authorizing a request for an immunity order; and (2) a proposed order requiring Fletcher to testify and stating that no testimony compelled under

the order may be used against him.[1]

The prosecutor advised the district court that he expected Fletcher, who was in federal custody, would not testify and stated, "I do have a motion to compel [Fletcher's] testimony as well as a proposed order based upon an immunity letter that I received this morning from the Department of Justice." The district court asked to see the letter, stated it would sign the order and had Fletcher brought into the courtroom.

Once on the witness stand, Fletcher invoked his Fifth Amendment rights, the court signed the proposed order and Fletcher's counsel advised he had explained the consequences to Fletcher and agreed no further inquiry was needed, as follows:

THE COURT:     Okay, are you Kenneth Fletcher?

THE WITNESS:   Yes.

THE COURT:     Okay. Mr. Fletcher, I have the authority to order you to testify in this proceeding, and I am so ordering you now.

---

[1]The order stated:

IT IS ORDERED, pursuant to Title 18, United States Code, Section 6002, that Kenneth Fletcher give testimony or provide other information which the witness refuses to give or provide on the basis of the witnesses' privilege against self-incrimination as to all matters about which the witness may be questioned before the Jury.

HOWEVER, no testimony of information compelled under this order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this Order.

THE WITNESS:  Okay.

THE COURT:  Okay.  Now the question then becomes is he going to invoke his Fifth Amendment right.

MR. DAVID RABEN:  Yes, he is going to invoke his Fifth Amendment.

THE COURT:  Okay.  In which case then I'm going to sign the order that the Government has asked me to sign.  Now, have you explained to Mr. Fletcher what the consequences will be in the event he fails to comply with the order?

MR. DAVID RABEN: I have.

THE COURT:  Okay.  So you've told him he could be held in criminal contempt, right?

MR. DAVID RABEN: Yes, I have.

THE COURT:  Okay.  And does he understand that?

THE WITNESS:  Yes.

MR. DAVID RABEN: I believe he does.  I've explained that to him.

THE COURT:  And what are your intentions, Mr. Fletcher?

THE WITNESS:  I wish not to testify, your Honor.

THE COURT:  Regardless of what the consequence is?

THE WITNESS:  Yes, ma'am.

THE COURT:  Okay.  Mr Cronin [the prosecutor], what do you propose?

4

MR CRONIN:     Your Honor, at this time I would ask that the Court hold him in criminal contempt.

THE COURT:     Okay. The Court will so hold him in criminal contempt. He has made it clear that he is not going to comply with the Court's order, and I don't believe any further inquiry is necessary. Do you?

MR. DAVID RABEN: Other than the objection I've already noted.

After Fletcher refused to testify, the prosecutor indicated that he would prepare a motion to begin contempt proceedings. The district court asked Fletcher whether he understood that his refusal to testify would likely result in his serving additional prison time, and Fletcher responded that he did.

## C.     Fletcher's Contempt Trial

The district court set the criminal contempt trial for February 2, 2009. Fletcher, now represented by a federal public defender, moved to vacate the district court's order setting a trial date. Fletcher argued that he refused to testify at Trought's trial on advice of counsel and that the district court personally had not communicated the grant of immunity to Fletcher and that thus he was not in contempt of court when he refused to testify. The district court denied the motion to vacate. Fletcher waived his right to a jury trial.

At the bench trial, the evidence consisted of: (1) the transcript of Fletcher's January 7, 2009 appearance at Trought's trial; (2) the government's motion to

compel Fletcher's testimony; (3) the January 6, 2009 letter from the Assistant Attorney General authorizing the request for an immunity order; and (4) the district court's January 7, 2009 order compelling Fletcher's testimony.

The district court found that it could "reasonably infer from the totality of the transcript" that defense counsel had told Fletcher about the grant of immunity. The district court stated that it was "clear from Mr. Raben's responses to my questions that he had gone over the entire situation with Mr Fletcher," including "the fact that the Government was going to compel him to testify under an order of immunity." Fletcher then deliberately violated the court's order. The district court concluded that the government had met its burden of proving that Fletcher was in contempt of court when he refused to testify at Trought's trial.

The district court later issued written Findings of Fact and Conclusions of Law. The district court noted that it had informed Fletcher that the order was being signed and then defense counsel had confirmed in Fletcher's presence that he had explained to Fletcher the consequences of the order. Defense counsel also confirmed that no further inquiry of Fletcher was required. Fletcher himself acknowledged that he understood the consequences of refusing to comply.

The district court found that, "[b]ased on the totality of the evidence submitted at the bench trial," the government proved beyond a reasonable doubt

6

that Fletcher had been informed of the court's order compelling his testimony and granting him immunity. Therefore, the district court adjudicated Fletcher guilty of criminal contempt.

## D. Sentencing on Contempt Conviction

The Sentencing Guidelines' contempt guideline, U.S.S.G. § 2J1.1, does not provide a specific base offense level. Instead, it cross-references § 2X5.1, which directs the district court to apply the most analogous offense guideline. Fletcher's Presentence Investigation Report ("PSI") stated that the most analogous guideline was the obstruction-of-justice guideline, U.S.S.G. § 2J1.2, and used § 2J1.2 to calculate his offense level of 22. With a criminal history category of III, the PSI recommended an advisory guidelines range of 51 to 63 months' imprisonment. Fletcher objected to the PSI's offense level calculation, arguing that the appropriate guideline was U.S.S.G. § 2J1.5 for failure of a material witness to appear.

At the sentencing hearing, the district court found that Fletcher's refusal to testify was most similar to the offense of being an accessory after the fact and that Fletcher's offense level was 22. The district court stated its belief, "based on what transpired in the trial, that [Fletcher] was trying to protect Mr. Trought in order to protect himself for some reason." The district court queried whether Fletcher or his family were threatened by Trought.

7

Fletcher then testified to his motives for refusing to testify. According to Fletcher, agents informed him during his debriefing that they did not believe what he was saying. The agents warned him that he would be charged with a crime if he repeated those statements at Trought's trial. As a result, Fletcher's attorney advised him not to testify. Fletcher also claimed that he did not learn about the grant of immunity until after he refused to testify.

The district court asked Fletcher if he had any other reason for deciding not to testify. Fletcher answered that he feared what would happen to himself or his family if he were responsible for Trought's conviction. The district court asked, "So you wanted to protect Mr. Trought and you wanted to protect yourself." Fletcher responded, "Yes." On redirect examination, Fletcher again stated that he decided not to testify on advice of counsel and because he was worried for himself and his family if Trough were convicted based on his testimony.

The district court stated that, although it did not condone the violation of court orders, it understood why Fletcher would be reluctant to testify against a codefendant who could probably harm Fletcher or his family. Although Fletcher's refusal to testify "may have been intended to impede" the government's prosecution of Trought, the district court noted that Trought was convicted on one count and would probably receive a substantial sentence. Therefore, the court

8

stated that it had no intention of sentencing Fletcher above the low end of his guideline range. The district court sentenced Fletcher to 51 months' imprisonment, "of which **TWELVE (12) MONTHS** shall run **CONCURRENT** to the defendant's original sentence imposed in [the drug conspiracy case]. Total additional time **THIRTY-NINE (39) MONTHS**."[2] Fletcher appealed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In order to convict a defendant of criminal contempt, the government must establish that: (1) the district court entered a lawful order of reasonable specificity, and (2) the defendant willfully violated that order. United States v. Straub, 508 F.3d 1003, 1010 (11th Cir. 2007). A violation of an order is willful if it is "'a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order.'" Id. at 1012 (quoting United States v. Baldwin, 770 F.2d 1550, 1558 (11th Cir. 1985)).[3]

---

[2]At the time of the criminal contempt sentencing, Fletcher still had some time left to serve on his drug conviction, and the district court ran part of the criminal contempt sentence concurrent with Fletcher's drug sentence. On appeal, neither Fletcher nor the government raises an issue regarding the district court's making part of the criminal contempt sentence concurrent and part of it consecutive.

[3]"In reviewing the sufficiency of the evidence in support of a finding of criminal contempt, we must determine whether the evidence, construed in the light most favorable to the government, would permit the trier of fact to find the defendant guilty beyond a reasonable doubt." United States v. Maynard, 933 F.2d 918, 920 (11th Cir. 1991) (quotation marks omitted).

Generally, a witness may not be convicted of criminal contempt for invoking his Fifth Amendment right against self-incrimination and refusing to testify. Kastigar v. United States, 406 U.S. 441, 448-49, 92 S. Ct. 1653, 1658-59, 32 L. Ed. 2d 212 (1972). However, when the testimony of a witness "may be necessary to the public interest" and that witness in a proceeding in a court of the United States refuses to testify on Fifth Amendment grounds, the United States attorney, with the approval of the Attorney General, may ask the district court to issue an order compelling the witness to testify under a grant of immunity. 18 U.S.C. § 6003.[4]

When the prosecutor properly makes such a request, the district court is required to issue the order to testify. Id. § 6003(a). An "immunity order which is

---

[4]Section 6003 states:
(a) In the case of any individual who has been or may be called to testify or provide information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refused to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this title.
(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, the Associate Attorney General, or any designated Assistant Attorney General or Deputy Assistant Attorney General, request an order under subsection (a) when in his judgment–
        (1) the testimony of other information from such individual may be necessary to the public interest; and
        (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.
18 U.S.C. § 6003.

issued pursuant to 18 U.S.C. § 6003 is not a matter of judicial process or judicial discretion. The immunity power originates in the legislature; its exercise is delegated solely to the executive." In re Corrugated Container Anti-Trust Litigation, 620 F.2d 1086, 1094 (5th Cir. 1980) (quotation marks and citation omitted);[5] see also Grand Jury Proceedings, 995 F.2d 1013, 1017-18 (11th Cir. 1993). Thus, the "courts have only a limited role in applying immunity statutes"; their duty "is only to ascertain whether the statutory requirements are complied with by the grand jury, the United States Attorney, and the Attorney General . . . ." Corrugated Container, 620 F.2d at 1094; see also United States v. Leyva, 513 F.2d 774, 776 (5th Cir. 1975) ("[S]ince the court's duties in granting the requested order are largely ministerial, when the order is properly requested the judge has no discretion to deny it.").

Here, the prosecutor filed a motion seeking an order compelling Fletcher to testify. Attached to the motion was the letter from the Acting Assistant Attorney General authorizing the request pursuant to § 6003(b). The parties do not dispute that the government's request met the statutory requirements. Thus, the district court had no discretion but to issue the order compelling Fletcher to testify.

---

[5]This Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

11

The district court did so by signing the order in Fletcher's presence. Specifically, after Fletcher asserted his Fifth Amendment privilege, the district court stated to Fletcher, "Okay. In which case then I'm going to sign the order that the government has asked me to sign. Now, have you explained to Mr. Fletcher what the consequences will be in the event he fails to comply with the order?" Fletcher's counsel responded that he had, and Fletcher agreed. At this point the statutory preconditions were met – Fletcher had refused to testify based on his Fifth Amendment privilege and the district court had communicated the order compelling him to testify. Thus, the order to testify became effective, and Fletcher could not refuse to comply with the order based on his Fifth Amendment right.

Fletcher argues that the order did not become effective because the district court did not properly "communicate" it to him. Fletcher points out that § 6003(a) provides that the § 6003 order "become[s] effective as provided in section 6002 of this title," and § 6002 provides the person presiding must communicate the order to the witness. See 18 U.S.C. §§ 6002, 6003(a). According to Fletcher, to properly communicate the order to him, the district court was required to state expressly to him in open court that he had received immunity from prosecution and therefore could no longer assert his Fifth Amendment privilege, which the district court did not do. Because the order did not become effective, Fletcher argues, he was

12

justified in continuing to invoke his Fifth Amendment privilege, and his silence

was not a "willful" violation of the order.

However, nothing in the language of either § 6002 or § 6003 states that the

district court must inform the witness in open court that he has been given

immunity by the government before compelling the witness to testify. Section

6003(a) states that, upon request of the government, the court "shall issue" an order

compelling testimony and "such order," not the grant of immunity, becomes

effective as provided in § 6002. In turn, § 6002 prohibits the witness from refusing

to comply with the order to testify on the basis of his Fifth Amendment privilege

when: (1) the witness "refuses," on Fifth Amendment grounds, "to testify"; and (2)

"the person presiding over the proceeding communicates to the witness an order

issued under this title . . . ." Id. § 6002.[6] The district court is required only to

"communicate" the order to testify to the witness, and the district court did so in

this case when it told Fletcher it was signing the government's proposed order

---

[6]Section 6002 states:
Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to . . . a court or grand jury of the United States . . . and the person presiding over the proceeding communicates to the witness an order issued under this title, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order . . . may be used against the witness in any criminal case, except prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.
18 U.S.C. § 6002.

compelling him to testify. It was not necessary for the district court to read the entire contents of the written order out loud to Fletcher or to explain the details of the written order to him. That is particularly true where it is apparent from the record that Fletcher already was aware of the order and the possible consequences for failing to comply with it. According to the transcript of the proceedings, Fletcher's attorney had received a copy of the government's motion and the proposed order and had discussed it with Fletcher before Fletcher took the witness stand. Moreover, Fletcher's defense counsel indicated to the district court that no further inquiry of Fletcher was required.

Fletcher relies upon United States v. Lach, 874 F.2d 1543 (11th Cir. 1989). However, Lach is materially different because there was no written order in Lach and the court only orally ordered the witness to testify. In Lach, the government moved for an order compelling the witness, Lach, to testify. Id. at 1545. The district court ruled orally that the government had taken all necessary steps to confer immunity under §§ 6002 and 6003, that Lach was ordered to testify, and that Lach's testimony could not be used against him in a criminal case, except for perjury, giving a false statement or failing to comply with the court's order. Id. at 1545 n.2.

On appeal, Lach argued that his criminal contempt conviction must be

reversed because, inter alia, the district court did not issue a written order.  Id. at 1547.  This Court concluded that a "[a] written order is not required; instead it is sufficient, for purposes of conferring immunity, if the person unequivocally conveys to the witness the fact that immunity has been granted."  Id.  (citation omitted).  The Court noted that, in making its oral ruling, the district court had "clearly explained to Lach the effect of its order, indicating that it effectively would preclude Lach from asserting his privilege against self-incrimination as a basis for refusing to testify and that any information compelled by it could not be used against Lach in any subsequent criminal proceeding other than a prosecution for perjury or contempt.  Accordingly, Lach was fully aware of the effect of the order and of the probable consequences of violating that order."  Id.  Lach did not say that all this was required by statute.  Rather, Lach held that given all of what the district court told the witness, it was sufficient to compel the witness to testify when there is no written order.[7]

Here, the contents of the district court's written order compelled the witness's testimony and expressly stated that no testimony compelled thereunder

_____

[7]Fletcher points to dicta in Lach that "[t]he grant of immunity is effective once 'communicated' to the witness," as support for his argument that the district court is required to explain the grant of immunity to the witness.  874 F.2d at 1547.  However, § 6003(a) has no reference to immunity, but says upon motion of the government the court "shall issue" the order to testify and that "such order," not the grant of immunity, becomes effective as provided in § 6002.  And, in turn, § 6002 states that the "order" must be communicated to the witness.

shall be used against the witness. Thus, the contents of the order were the same as in <u>Lach</u>, but only in writing. Fletcher's attorney had a copy of the motion and proposed order, Fletcher and his attorney were in court when the district court signed the proposed order, the district court told Fletcher he was ordering him to testify and Fletcher's attorney told the district court Fletcher was aware of the consequences and no further inquiry was needed. Under the particular circumstances of this case, we conclude that nothing in §§ 6002 and 6003 or in <u>Lach</u> required the district court in open court to read the contents of the written order to Fletcher in order for Fletcher to be convicted of criminal contempt. Rather, sufficient evidence supports the district court's findings beyond a reasonable doubt that from the totality of the circumstances defense counsel told Fletcher about the grant of immunity, that the court informed Fletcher of the order to testify and that Fletcher wilfully violated the order compelling him to testify.

**B.   Base Offense Level**

The Sentencing Commission declined to provide a specific offense level guideline for contempt offenses because "misconduct constituting contempt varies significantly and the nature of the contemptuous conduct, the circumstances under which the contempt was committed, the effect the misconduct had on the administration of justice, and the need to vindicate the authority of the court are

highly context-dependent . . . ." U.S.S.G. § 2J1.1 cmt. n.1. Thus, the advisory guideline for contempt offenses, U.S.S.G. § 2J1.1, directs the district court to apply the guideline provision for "Other Offenses," U.S.S.G. § 2X5.1.

Section 2X5.1, which applies to felony offenses for which no specific guideline has been promulgated, directs the district court to apply "the most analogous offense guideline." U.S.S.G. § 2X5.1 "The most analogous guideline contemplated by section 2X5.1 is the guideline that applies to the most analogous statute of conviction." United States v. Hyde, 977 F.2d 1436, 1438-39 (11th Cir. 1992). If there is no sufficiently analogous guideline, then the district court must fashion an appropriate sentence under 18 U.S.C. § 3553. U.S.S.G. § 2X5.1.[8]

In this case, the district court found that Fletcher's conduct was most analogous to the offense of being an accessory after the fact and used the accessory-after-the-fact guideline, U.S.S.G. § 2X3.1, to determine Fletcher's base offense level of 22. Fletcher argues that his conduct is unlike being an accessory after the fact because he was incarcerated at the time and could not have actively aided or helped Trought. Fletcher argues his conduct is more analogous to being a material witness who has failed to appear and that his base offense level should

_____

[8]"Whether a guideline is or is not analogous to a defendant's criminal activity is a question of law" we review de novo. United States v. Gabay, 923 F.2d 1536, 1545 (11th Cir. 1991). "Findings of fact that underlie the district court's sentence are reviewed under a clearly erroneous standard." Id. at 1544.

17

have been 6 under U.S.S.G. § 2J1.5(a)(1), the failure-to-appear guideline.

We, however, agree with the PSI that Fletcher's refusal to comply with the district court's order and testify at Trought's trial is most analogous to the obstruction-of-justice guideline. At the sentencing hearing, Fletcher admitted that one reason he refused to testify at Trought's trial was to protect Trought. Fletcher explained that he feared for himself and his family if Trought were convicted based on his testimony. Fletcher's testimony supports the district court's finding that Fletcher refused to testify, at least in part, to impede Trought's trial and conviction. Fletcher's intent makes his conduct more akin to obstructing justice than to failing to appear. See also United States v. Marquardo, 149 F.3d 36, 45 (1st Cir. 1998) (applying § 2J1.2, and not § 2J1.5, where a witness refused to testify under a grant of immunity before a grand jury because witness knew his refusal would obstruct the grand jury proceedings); United States v. Remini, 967 F.2d 754, 760 (2d Cir. 1992) (applying § 2J1.2, rather than § 2J1.5, where the district court found the witness intended to obstruct justice when he refused to testify under a grant of immunity).[9]

---

[9]United States v. Ortiz, 84 F.3d 977 (7th Cir. 1996), cited by Fletcher, is inapposite. In Ortiz, the witness refused to testify in his co-defendant's trial because he did not want to be known as a "snitch." Id. at 982. And, there was no evidence that the witness's refusal "was designed to assist Ortiz in escaping punishment." Id. at 981. However, in Fletcher's case, there was evidence–from Fletcher himself–that his refusal to testify was motivated in part by a desire help Trought avoid conviction. Thus, we find the obstruction-of-justice guideline, while not a perfect fit, is the most analogous guideline.

Although the district court found Fletcher's conduct to be most analogous to being an accessory after the fact, the district court's finding is harmless error because the cross-reference in § 2J1.2, the obstruction-of-justice guideline, makes the accessory-after-the-fact guideline applicable to Fletcher's offense. The obstruction-of-justice guideline, § 2J1.2, provides for a base offense level of 14. U.S.S.G. § 2J1.2(a). However, § 2J1.2 also provides that "[i]f the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is <u>greater</u> than that determined above." U.S.S.G. § 2J1.2(c) (emphasis added); see <u>United States v. McQueen</u>, 86 F.3d 180, 182 (11th Cir. 1996) (concluding that § 2J1.2's cross-reference to § 2X3.1 is mandatory if the requirements are met).

In Fletcher's case, both of § 2J1.2's cross-reference requirements were met. First, Fletcher's contempt involved obstructing the prosecution of criminal charges against Trought. Second, § 2X3.1 resulted in a greater offense level of 22 than § 2J1.2's offense level of 14.[10] Accordingly, Fletcher has not shown any reversible

---

[10]Section 2X3.1 provides that the base offense level for accessory after the fact is "**6** levels lower than the offense level for the underlying offense . . . ." U.S.S.G. § 2X3.1(a)(1). The offense level for Trought's underlying drug offense was 28, giving Fletcher an offense level of 22 under § 2X3.1. Thus, the offense level of 22 under § 2X3.1 was greater than the offense level of 14 under § 2J1.2.

error in the district court's using an offense level of 22 in sentencing him.

**AFFIRMED.**