UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry D. BROWN, Defendant-Appellant.

No. 83–3219.

United States Court of Appeals,
Seventh Circuit.

Argued April 19, 1984.

Decided Aug. 22, 1984.

Alexander S. Vesselinovitch, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Leonard Karlin, Chicago, Ill., for defendant-appellant.

Before PELL and POSNER, Circuit Judges, and WEIGEL, Senior District Judge.[*]

WEIGEL, Senior District Judge.

Appellant, Larry D. Brown, was charged by indictment with five counts of knowingly converting a thing of value of the United States—funds represented by checks drawn on the account of the Community and Economic Development Association of Cook County (CEDA)—in violation of 18 U.S.C. § 641. After a bench trial, he was convicted on all counts and sentenced to concurrent sentences of three years probation on each count.

Appellant challenges the sufficiency of the evidence to support his conviction. He also contends that his conviction must be set aside for impermissible preindictment delay. Having considered these claims, we affirm the judgment of the district court.

## I.

At issue in this case was the conversion of five CEDA checks between October 29, 1981 and November 30, 1981. Each check was payable to "Larry Brown" and negotiated at the St. Charles Road Currency Exchange, Bellwood, Illinois. As described at trial, the exchange operated much as a bank does, providing check cashing services for a fee; one teller window was reserved for Western Union transactions. The evidence established that CEDA operates programs for the disadvantaged in suburban Cook County, Illinois, and that the checks were drawn on a CEDA bank account funded by the United States Department of Housing and Urban Development (HUD) through an intervening grant to Cook County and subgrant to CEDA.

Eva Absher was employed at the exchange from the end of September, 1981 until the middle of December 1981. She worked chiefly at the Western Union offices on the premises. As part of her Western Union duties, Absher cashed money orders that had been transmitted there for customers of the exchange.

Absher testified that she first met appellant at the exchange in September, 1981, when he came to the Western Union window to obtain a money order from his employment credit union. Appellant displayed his driver's license and signed a Western Union form. Absher compared the signatures and gave him the money order. Absher dealt with appellant at the exchange on twelve to fifteen occasions between September and December, 1981.

Absher further testified that on November 30, 1981, she cashed a CEDA check for appellant. After he received and cashed a money order at the Western Union window, he asked her to cash the CEDA check. To cash that check, they moved to a currency exchange window. Absher examined appellant's signature file card and found that CEDA's name and telephone number were entered on it. This indicated that the exchange previously had cashed CEDA checks for appellant and that exchange employees were authorized to cash such checks for him. Appellant endorsed the check and Absher cashed it. She identified a CEDA check dated November 30, 1981, payable to Larry Brown in the amount of $568.89, as the one she had cashed for appellant on that date.

---

[*] Hon. Stanley A. Weigel of the Northern District of California, sitting by designation.

The evidence showed that one of the other four CEDA checks made payable to appellant was cashed at the exchange on November 23, 1981. Absher testified that she cashed a money order for appellant on November 23, 1981.

Absher's testimony was largely corroborated by that of Venisha Watt, who worked as a clerk at the exchange. She stated that on a Friday in late November, 1981, appellant came into the exchange and cashed a money order at the Western Union window attended by Absher. Watt then saw appellant and Absher move to another window where Absher counted out the money for a second transaction. Appellant took the money and left. Watt also confirmed that the signature file card for "Larry Brown" was assigned to appellant.

A CEDA employee identified the five checks which are the subject of the indictment as among ones stolen from a carton of blank checks at CEDA's offices. The employee also testified that no one named Larry Brown was employed by CEDA or was a proper payee of CEDA funds.

Appellant testified that his credit union would transmit money orders to him at the exchange. Although appellant admitted cashing these money orders at the exchange, he denied ever cashing any checks there. On cross-examination, he acknowledged that his signature appeared on the signature card for Larry Brown, that he negotiated the money orders of November 23 and November 30, 1981 at the exchange, and that he went to the exchange approximately twelve times between September and December, 1981.

## II.

■ Appellant was convicted on five counts of violating 18 U.S.C. § 641, which makes it unlawful knowingly to convert a "thing of value of the United States." Appellant contends that the government failed

to prove violation of 18 U.S.C. § 641. First, he argues that the evidence was insufficient to support the district court's conclusion that appellant negotiated the checks. Appellant then argues that the CEDA funds were not a "thing of value of the United States," and also that 18 U.S.C. § 641 is not violated where the loss may ultimately be borne by the financial institutions involved. These claims are without merit.[1]

The evidence supporting the conviction is sufficient if, viewing it in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Moya,* 721 F.2d 606, 610 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984). In this case, ample evidence supports the district court's finding that appellant negotiated the stolen CEDA checks. Such evidence included: (1) Absher's testimony identifying appellant as the person who cashed one of the stolen checks; (2) Watt's corroborating testimony; (3) entries on appellant's signature file card; (4) the evidence that the checks were made payable to appellant and endorsed by him; (5) the circumstances of the checks' negotiation; and (6) appellant's own testimony.

■ Appellant further contends that he should not have been convicted of violating 18 U.S.C. § 641 because the funds which he sought to convert were not "thing[s] of value of the United States or of any department or agency thereof." The district court considered this claim and properly rejected it:

> The evidence established that the funds defendant sought to convert by cashing the checks were federal funds held in the accounts of a subgrantee, for which it was answerable to Cook County as

---

1. Appellant also challenges the district court's determination of the witnesses' relative credibility, the weight accorded to certain evidence and the court's reliance on circumstantial evidence. It is not our function to reconsider questions as to the credibility of witnesses or the weight of the evidence. *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983). And circumstantial evidence is as probative as direct evidence. *Id.*

grantee, which in turn was answerable to the federal government. This accountability was pursuant to a federal program for the disbursement of and supervision over block grant funds intended to be used for certain federally-sanctioned purposes. This court is satisfied that the federal government retained a sufficient "property interest" in the funds so as to bring them within the ambit of 18 U.S.C. § 641 ....

Memorandum and Order, October 21, 1983.

The record demonstrates HUD's control of the funds as imposed through written regulations and grantee agreements. It details the transfer of the funds from HUD to Cook County to CEDA and the latter's bank account. As this court observed when faced with an analogous question as to the federal nature of misappropriated funds, "federal money went into the pipeline and remained federal money all the way into defendant's [possession]." *United States v. Hamilton*, 726 F.2d 317, 321 (7th Cir.1984). *See also United States v. Harris*, 729 F.2d 441, 446–47 (7th Cir.1984), in which we held that property bought by a local agency with funds subject to similar controls as those in the case before us was "a thing of value belonging to" the granting federal agency.

■ Appellant's final challenge to the adequacy of the proof at trial is based upon the claim that 18 U.S.C. § 641 requires proof that the government suffered actual loss. Because CEDA might hold some potential legal right to reimbursement from third parties for the amounts converted by means of the stolen checks, appellant argues that CEDA has not suffered actual loss. This court has previously rejected indistinguishable contentions. *United States v. Mitchell*, 625 F.2d 158, 160–61 (7th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980); *United States v. Maxwell*, 588 F.2d 568, 573–74 (7th Cir.1978), *cert. denied*, 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979).

### III.

■ Appellant contends that the government improperly delayed indictment for more than eighteen months after the offenses were discovered, thereby depriving him of due process of law and a speedy trial—rights secured by the Fifth and Sixth Amendments respectively.

The record provides no basis for a claim founded on preindictment delay. The Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown *both* that preindictment delay caused substantial prejudice to his right to a fair trial and that the delay was an intentional device to gain tactical advantage. *See United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *United States v. Juarez*, 561 F.2d 65, 68 (7th Cir.1977).

■ Appellant has not shown actual prejudice resulting from preindictment delay. He merely asserts that he was unable to locate a witness who was employed at the exchange and that this witness's testimony could have been important to his defense. There is no evidence that appellant ever made any attempt to locate the witness nor to secure his testimony by legal process. Nor does appellant demonstrate what particular testimony the unavailable witness would have given. "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice" stemming from preindictment delay. *United States v. Jenkins*, 701 F.2d 850, 855 (10th Cir.1983). Furthermore, appellant does not even contend that the preindictment delay was purposefully caused by the government to gain tactical advantage or for any other improper purpose.

■ Appellant's argument that he was denied the right to a speedy trial secured by the Sixth Amendment is frivolous. Rejecting a similar claim based on a three-year preindictment delay, the Supreme Court has held that "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused'." *Marion*, 404 U.S.

at 313, 92 S.Ct. at 459. The status of an "accused" is "attained only upon 'a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge'." *Juarez*, 561 F.2d at 67 (quoting *Marion*, 404 U.S. at 320, 92 S.Ct. at 463). In this case, appellant was first "accused" by an indictment filed July 7, 1983. Trial on those charges commenced October 14, 1983. Appellant does not assert any denial of speedy trial rights based upon the time between the date of indictment and the date of trial.

AFFIRMED.