**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Nell SCOTT, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald SCOTT, Defendant-Appellant.**

Nos. 85–1137, 85–1138.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 12, 1985.

Decided Feb. 26, 1986.

788

Ronald Scott, Jerold Solovy, Jenner & Block, Jane DiRenzo Segraves, Laura A. Kaster, Chicago, Ill., for defendant-appellant.

Laurie J. Barsella, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, RIPPLE, Circuit Judge and PELL, Senior Circuit Judge.*

PER CURIAM.

### I  Facts

Nell Scott and Ronald Scott, wife and husband, were convicted on federal charges related to checks stolen from a local government agency that received federal funding. Mrs. Scott was convicted on twenty-two counts of violating 18 U.S.C. § 641 (1948) and one conspiracy count in violation of 18 U.S.C. § 371 (1948). Mr. Scott was convicted on seven counts of violating § 641 and one conspiracy count. Section 641 prohibits the embezzlement or stealing of any "money, or thing of value

---

* Judge Pell had been a member of the original panel sitting on this case and approved in principle the result reached in the foregoing opinion, although for reasons not connected with the decision of the case he did not participate in any judicial work subsequent to December 30, 1985.

of the United States or of any department or agency thereof." Section 371 prohibits conspiracy "to commit any offense against the United States, or to defraud the United States, or any agency thereof."

Mrs. Scott was the payroll bookkeeper at the Joliet-Will County Community Action Agency (CAA), a local government agency. During the pertinent time period, CAA received 98% of its funding either directly from the federal government or from state and local agencies that channeled federal funds to CAA. As payroll bookkeeper, Mrs. Scott issued payroll checks when authorized by superiors to do so. Her job gave her access to blank payroll checks and a signature machine which duplicated an authorized signature, as well as the ability to order computer issued paychecks. After the termination of her employment at CAA, twenty-two unauthorized payroll checks were discovered. These checks were issued to "Nell Scott," "Nellie Scott," "Mary Cooper," "Mickey Johnson," "National Bank of Joliet," and the "Union National Bank." Each check was for more than $100 and together they totaled approximately $10,500.

Expert testimony established that some, but not all, of these checks contained fingerprints and/or handwriting of Nell and/or Ronald Scott. Moreover, some of the checks were cashed at banks and currency exchanges which had signature cards on file bearing the name that appeared on the check but in the handwriting of one of the defendants. Furthermore, Mrs. Scott was identified by both a currency exchange employee and a bank employee as being the woman who attempted to or did cash some of the checks. A search of the Scotts' residence recovered other CAA checks made out to "Mary Cooper" and "Mickey Johnson," and an identification card for "Mary Cooper" with Mrs. Scott's picture on it.

Following a joint bench trial, at which neither defendant presented any witnesses, both defendants were convicted on all counts in their indictments. Each defendant was sentenced to five years probation. Mr. Scott was also sentenced to sixty days work release. Though represented by separate attorneys at trial, defendants appear before us *pro se;* they filed consolidated briefs.

## II *Speedy Trial*

■ Mrs. Scott claims that delays in her trial violated the Speedy Trial Act (Act), 18 U.S.C. §§ 3161–3174 (1979).[1] Under the Act, her trial had to commence within seventy days after she made her first appearance. *Id.* § 3161(c)(1). She first appeared on September 29, 1983 and her trial did not begin until November 1, 1984. However, the district court properly excluded four periods of time from the seventy-day computation.

■ Absent legal error, exclusions of time cannot be reversed except when there is an abuse of discretion by the court and a showing of actual prejudice. *See United States v. Tedesco,* 726 F.2d 1216, 1221 (7th Cir.1984); *United States v. Aviles,* 623 F.2d 1192, 1196 (7th Cir.1980). Continuity of counsel is a legitimate ground for excluding time. *See* 18 U.S.C. § 3161(h)(8)(B)(iv); *United States v. Jones,* 712 F.2d 1316, 1323 (9th Cir.), *cert. denied sub nom., Webber v. United States,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983). It was not an abuse of discretion to grant a three-week delay and exclusion while defense counsel was on leave from her office so that defendant could continue to be represented by the same counsel.

■ The Act specifically provides that time may be excluded for delays caused by proceedings and examinations concerning the defendant's mental competency. 18 U.S.C. § 3161(h)(1)(A). The seven-month delay caused while determining that defendant was competent was not excessive

---

**1.** In their reply brief defendants also argue that Mr. Scott's speedy trial rights were violated. However, new issues cannot be raised in a reply brief. *See Christmas v. Sanders,* 759 F.2d 1284, 1292 (7th Cir.1985). Even if we were to reach the issue, relief would be denied for reasons similar to those applied in Mrs. Scott's case.

in light of the fact that it was necessary to have extensive testing by two psychiatrists. It was well within the court's discretion to order a second psychiatric examination following the hearing on March 16. *See United States v. Crosby*, 713 F.2d 1066, 1078 (5th Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983); *United States v. Howell*, 719 F.2d 1258, 1261–62 (5th Cir.1983) (per curiam), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). Defendant argues that her case is distinguishable because, although her attorney desired a competency hearing, defendant herself did not. However, the statute permits exclusion for "any" competency examinations, not just those personally requested by the defendant. 18 U.S.C. § 3161(h)(1)(A). Moreover, when the initial competency examination was ordered, defendant was the one who originally suggested that an examination by a second doctor might be desirable. Pretrial Tr. at 22. When the second examination was ordered, defendant did not object. Pretrial Tr. at 30–35.

■ The court also properly excluded two other periods of time. Section 3161(h)(7) specifically permits exclusions for the joinder of defendants. There is "a strong congressional preference for joint trials and an intention that delays resulting from the joinder of codefendants be liberally construed." *United States v. Dennis*, 737 F.2d 617, 621 (7th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 215, 85 L.Ed.2d 145 (1984) (quoting *United States v. Novak*, 715 F.2d 810, 814 (3d Cir.1983), *cert. denied sub nom. Ware v. United States*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984)). Any delay applicable to one defendant is applicable to all defendants. *Dennis*, 737 F.2d at 620. Initially, a thirty-day delay was necessary because Mr. Scott could not be brought to trial less than thirty days after his appearance. *See* 18 U.S.C. § 3161(c)(2). The delay beyond thirty days was reasonable, not an abuse of discretion. *See Dennis*, 737 F.2d at 621–22. Exclusions of time to ensure that defendant could get along with counsel, and later on, to allow time for new counsel to familiarize

himself with the case were also within the discretion of the court. *Cf.* 18 U.S.C. § 3161(h)(8)(B)(iv) (reasonable time to obtain counsel).

Defendant also claims her sixth amendment right to a speedy trial was denied. Defendant fails to meet the requirements of such a claim, particularly the showing of prejudice. *Compare United States v. Jackson*, 542 F.2d 403, 405–09 (7th Cir. 1976) (delays related to psychiatric examinations); *Crosby*, 713 F.2d at 1078–79 (same); *See also United States ex rel. Mitchell v. Fairman*, 750 F.2d 806, 807–10 (7th Cir.1984) (discussing the constitutional standard for a speedy trial).

### III  *Sufficiency of Evidence*

In determining if there is sufficient evidence, we must affirm if, viewing the evidence in the light favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Moya*, 721 F.2d 606, 610 (7th Cir.1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)); *United States v. Brown*, 742 F.2d 359, 361 (7th Cir.1984).

### A.  *Thing of Value of the United States*

■ Defendants argue that their convictions were based on insufficient evidence because there was inadequate proof that any of the stolen checks was "money, or [a] thing of value of the United States or of any department or agency thereof." 18 U.S.C. § 641. There was sufficient evidence to find that CAA received 98% or more of its funding from federal sources. Most of this funding was received from state and county agencies under programs entirely funded by federal grants. The evidence also showed that the federal government controlled the spending of these funds. It regulated how the funds could be spent; it monitored and audited the programs; it required periodic reports concerning the programs; and it could de-

mand that grants be repaid if the money was either unspent or improperly spent. Furthermore, the evidence showed that CAA had special accounts for each of the various federal programs or grants and that the payroll account was funded by transferring pro rata amounts from these program accounts.

■ In determining if stolen funds are things of value of the United States, the key factor is whether the federal government still maintained supervision and control over the funds at the point when the funds were stolen. *See United States v. Bailey,* 734 F.2d 296, 300–01 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 327, 83 L.Ed.2d 263 (1984). Evidence that the federal government monitors and audits programs, regulates expenditures, and has the right to demand repayment of funds is adequate evidence that stolen funds or property were a thing of value of the United States under § 641. *See id.; Brown,* 742 F.2d at 362; *United States v. Mitchell,* 625 F.2d 158, 161 (7th Cir.), *cert. denied,* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980); *United States v. Maxwell,* 588 F.2d 568, 572 (7th Cir.1978), *cert. denied,* 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979); *United States v. Smith,* 596 F.2d 662, 664 (5th Cir.1979); *see also United States v. Harris,* 729 F.2d 441, 446 (7th Cir.1984) (analogous crime under 18 U.S.C. § 657).

Cases cited by defendants are distinguishable. In *United States v. Owen,* 536 F.2d 340, 343 (10th Cir.1976), the evidence was insufficient because federal funds were only used to start up a local program and there was inadequate evidence that any of the federal funds remained at the time of the alleged crime. In the present case, federal funding was continuous. In *United States v. Morris,* 541 F.2d 153, 155 (6th Cir.1976), the check was actually sto-

len from a private corporation before it reached the federally funded agency and therefore nothing of value was stolen from the agency. That situation, of course, does not exist here. Relying on *United States v. Collins,* 464 F.2d 1163, 1165 (9th Cir. 1972), the defendants also argue that the United States suffered no loss because they claim the bank, not CAA or the United States government, suffered the loss resulting from the improperly drawn checks. This court, however, has repeatedly rejected the holding in *Collins* and instead has clearly held that proof of an actual loss is not required under § 641. *See Brown,* 742 F.2d at 362; *Bailey,* 734 F.2d at 301–02; *Mitchell,* 625 F.2d at 160–61; *Maxwell,* 588 F.2d at 574.

The evidence is sufficient to support a finding that defendants stole a thing of value from the United States.

B. *Fingerprint and Handwriting Evidence*

■ Mr. Scott claims that the only evidence presented to convict him was fingerprints and handwriting found on some documents,[2] and that such evidence was insufficient to convict him. Every one of the checks that is a basis of a count against Mr. Scott contained one or more of his fingerprints.[3] A "Mickey Johnson" signature card from the Cass Street Currency Exchange, which is where all the "Mickey Johnson" checks were cashed, contained his handwriting, as did two of the checks. Most of the checks contained his palm prints in a position consistent with a person endorsing the check. Two additional CAA checks made payable to "Mickey Johnson" were found in the Scotts' bedroom during a search on March 16, 1984. Of seventy-four prints found on twenty-two checks, four signature cards, and a few other exhibits, forty-seven could not be identified and four were inconclusively identified. The finger-

---

2. Defendant also refers to an identification card in the name of "Mickey Johnson" which was allegedly improperly admitted into evidence. However, that card was never presented into evidence and therefore we do not consider it.

3. Six of the checks that are the basis of counts against Mr. Scott were made out to "Mickey Johnson." One check was to Mrs. Scott. None of the checks that are a basis of the other counts against Mrs. Scott are made out to "Mickey Johnson."

print expert explained that this was common with bank checks, which are ordinarily handled by many people. He also explained how some items could have no prints on them, as well as detailing the process for identifying latent prints found on paper documents.

Such evidence was sufficient to find Mr. Scott guilty beyond a reasonable doubt. There is no adequate explanation for how his prints and handwriting appeared on the checks and signature card. The mere possibility that Mr. Scott might have innocently touched the checks is not enough to raise a reasonable doubt. *See United States v. Bush*, 749 F.2d 1227, 1229 (7th Cir.1984). Moreover, there would still be no explanation why the signature card, which never left the currency exchange, and two checks are in Mr. Scott's handwriting.

Cases cited by defendant can be distinguished both by the public accessibility of the place the prints were found and the minimal number of prints found. In *Hiet v. United States*, 365 F.2d 504, 505–06 (D.C.Cir.1966), one fingerprint was found on the open vent window of a burglarized car. This was the only evidence against the defendant and there was also other inconsistent and exculpatory evidence in the record. In *Borum v. United States*, 380 F.2d 595, 596–97 (D.C.Cir.1967), the only evidence against the defendant was his fingerprints on jars found inside a burglarized house. The jars had previously been kept outdoors near the sidewalk. The present case is more like *Stevenson v. United States*, 380 F.2d 590, 592–93 (D.C. Cir.), *cert. denied*, 389 U.S. 962, 88 S.Ct. 347, 19 L.Ed.2d 375 (1967), in which there was no explanation, consistent with innocence, for the presence of the defendant's fingerprint inside a burglarized house. *See also United States v. Scott*, 452 F.2d 660, 662 (9th Cir.1972) (fingerprints on two items stolen from a bank and on a flashlight battery left in the bank was sufficient to identify the defendant).

The evidence is sufficient to support the finding that Mr. Scott was guilty on all counts.

## IV  *Grand Jury Abuse*

Defendants claim that their indictment should have been dismissed on the ground that the prosecutor abused the grand jury process. They also apparently claim that the admission of Mr. Scott's fingerprints and handwriting samples in this proceeding violated the spousal immunity privilege.

Mrs. Scott was originally indicted in September 1983. In December, her husband was subpoenaed to testify before the grand jury. At a subsequent hearing, the United States Attorney explained that the government sought only fingerprints, palm prints, and handwriting exemplars, not testimony, and that the target of the investigation was Mr. Scott, not Mrs. Scott. Based on these representations, the subpoena was not quashed and Mr. Scott agreed to provide the information. In July 1984, the government indicted him and filed a superseding indictment against Mrs. Scott.

■■■■ Defendants argue there was no probable cause for subpoenaing Mr. Scott. However, probable cause is not required for a grand jury investigation. *See Matter of Special February 1975 Grand Jury*, 565 F.2d 407, 411 (7th Cir.1977); *see also United States v. Sahley*, 526 F.2d 913, 915–16 (5th Cir.1976). Defendants argue that the grand jury was improperly used to investigate Mrs. Scott. It is true that a grand jury cannot be used simply to further investigate a defendant for a crime for which she has already been indicted. However, this rule is only violated if that was the sole or dominant purpose for gathering evidence. *United States v. Zarattini*, 552 F.2d 753, 756–57 (7th Cir.), *cert. denied*, 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977); *United States v. Moss*, 756 F.2d 329, 332 (4th Cir.1985); *Matter of Sinadinos*, 760 F.2d 167, 171 (7th Cir.1985). The subsequent indictment of Mr. Scott shows that the grand jury was not solely or predominantly used to investigate Mrs. Scott. The district court did not err in refusing to dismiss the indictments.

■■■■ Defendants further claim that subpoenaing Mr. Scott violated the spousal

immunity privilege. However, that privilege was not available in this case. The marital privilege applies to adverse testimony and is not available when a spouse is compelled to give handwriting exemplars or fingerprints as part of a criminal investigation. *See United States v. Clark*, 712 F.2d 299, 300–02 (7th Cir.1983); *United States v. McKeon*, 558 F.Supp. 1243, 1245–47 (E.D.N.Y.1983). Lastly, defendants complain that the subpoena referred to testimony, but did not mention handwriting or fingerprints. However, at the hearing, the government explained to Mr. Scott that it sought no testimony before the grand jury. Furthermore, even if the subpoena had been quashed, the government would have eventually been able to obtain the evidence. As in another case involving alleged technical deficiencies with a subpoena for handwriting exemplars, "we see no constitutional violation; we see no egregious conduct; and we see absolutely no reason or purpose to be served by exclusion of the identification items in the circumstances of this case." *United States v. Santucci*, 674 F.2d 624, 632 (7th Cir.1982), *cert. denied*, 459 U.S. 1109, 103 S.Ct. 737, 74 L.Ed.2d 959 (1983).

### V  *Other Issues*

■■■ Defendants claim that the district court committed reversible error by refusing to admit evidence of irregular financial management at CAA. We will not reverse the district court's decision to exclude such evidence unless the court abused its discretion. *See United States v. Latham*, 754 F.2d 747, 751 (7th Cir.1985); *United States v. Harris*, 761 F.2d 394, 398 (7th Cir.1985). The district court did not abuse its discretion in refusing to admit evidence on a collateral issue that was likely to be time-consuming. Moreover, absent a showing that other people at the agency may have been the ones cashing the stolen checks involved in this case, the alleged fact that other people at the agency performed irregularities or unlawful acts is irrelevant. Defendants did attempt to show that two other employees at CAA may have stolen the checks, but they do

not allege that the excluded evidence pertained to that issue. Furthermore, there was no "*Brady* violation," *see Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), for prosecutorial failure to reveal that CAA went "bankrupt" two weeks before trial, since such information was irrelevant.

■■■ Defendants filed a "Motion for a Relief from Judgment of Order" and the government moved to strike that motion. We construe the defendants' motion liberally and find it to be a motion under Fed.R. Crim.P. 33. Under Rule 33, such a motion must first be filed in the district court. *See United States v. Ellison*, 557 F.2d 128, 131–32 (7th Cir.), *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977); *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 2051 n. 42, 80 L.Ed.2d 657 (1984). The government's motion to strike is granted.

Other issues raised by defendants have been given due consideration, but we do not find them to be grounds for granting relief.

For the reasons given above, the judgment of the district court is

AFFIRMED.