978 F.2d 964
 36 Fed. R. Evid. Serv. 1032
 UNITED STATES of America, Plaintiff-Appellee,
v.
Francis LARKIN and Francis Bolduc, Defendants-Appellants.
 Nos. 91-2247, 91-2258.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 7, 1992.
Decided Oct. 13, 1992.
Rehearing and Rehearing En Banc Denied
in No. 91-2258 March 10, 1993.
 
 Eric J. Klumb (argued), Stephen J. Liccione, Matthew L. Jacobs, Asst. U.S. Attys., Office of U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.
 Jerome F. Statkus (argued), Menomonee Falls, Wis., for defendant-appellant Francis Larkin.
 Anthony J. Deutsch (argued), Gonzalez & Saggio, Milwaukee, Wis., for defendant-appellant Francis Bolduc.
 Before FLAUM and MANION, Circuit Judges, and SHADUR, Senior District Judge.*
 FLAUM, Circuit Judge.
 
 
 1
 A federal jury convicted Francis Larkin and Francis Bolduc of one count of armed bank robbery, 18 U.S.C. § 2113(a) & (d), one count of attempted armed bank robbery, id., and two counts of possessing a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1), and the district court sentenced them to 390 months and 580 months of imprisonment, respectively. Larkin and Bolduc appeal their convictions, and Larkin appeals the calculation of his sentence. We affirm.
 
 I.
 
 2
 The convictions in this case were based almost exclusively upon the testimony of bank employees present during the robberies who identified Larkin and Bolduc as the perpetrators. These employees provided in-court identifications of Larkin and Bolduc, and several also testified that they had identified either or both of the defendants at a lineup conducted approximately six months before trial. Larkin and Bolduc contend that the district court committed reversible error by not suppressing the testimony (which for convenience sake we shall call the "lineup testimony") offered by the witnesses who had participated in the lineup. The defendants argue, first, that the government's method of bringing them from Massachusetts to Wisconsin and compelling them to take part in the lineup contravened their rights under the due process clause. Second, they maintain that the government's refusal to furnish appointed counsel at the lineup abridged their sixth amendment rights. Third, Larkin contends that the lineup was unduly suggestive and unreliable in violation of the due process clause. We consider each contention in turn.
 
 A.
 
 3
 Prior to August 6, 1990, Larkin and Bolduc were incarcerated in Massachusetts state prison. The federal government obtained custody of the pair from Massachusetts authorities on that date via a writ of habeas corpus ad prosequendum--a writ we shall discuss at greater length in a moment--issued by the federal district court in Milwaukee. Both defendants appeared before a federal grand jury in Milwaukee on August 21, 1990, and the grand jury ordered them to participate in the lineup later that day.
 
 
 4
 Larkin and Bolduc insist that the process by which federal officials in Wisconsin obtained their custody was irregular, and they are correct. Before explaining why, it would be helpful to first summarize the proper procedures under which the government can acquire custody over state prisoners, as well as compel their appearance before a grand jury and in a lineup. Once a valid subpoena has been issued, the government may apply to a federal court for a writ of habeas corpus ad testificandum to gain custody over a state prisoner and secure his presence before the grand jury. 28 U.S.C. § 2241(c)(5); United States v. Lach, 874 F.2d 1543, 1548 (11th Cir.1989); Carmona v. Warden, 549 F.Supp. 621, 622 (S.D.N.Y.1982); see generally Ex parte Bollman, 8 U.S. (4 Cranch) 74, 97-98, 2 L.Ed. 554 (1807); In re Liberatore, 574 F.2d 78, 89 (2d Cir.1978). The court must examine the application, and may in its discretion issue the writ after considering both its necessity and purpose. Once the writ has issued, the government may bring the prisoner before the grand jury; the grand jury may then hear the prisoner's testimony, order him to participate in a lineup, or both. After the purposes for which the writ was granted have been accomplished, the government must return the prisoner to state custody.
 
 
 5
 These procedures were not followed in this case. First, the government sought, and the district court granted, a writ of habeas corpus ad prosequendum, not a writ of habeas corpus ad testificandum. While the same statutory provision authorizes both writs, 28 U.S.C. § 2241(c)(5), their functions are different. A prosequendum writ permits the government to remove a prisoner to the proper jurisdiction for prosecution, Carbo v. United States, 364 U.S. 611, 615, 81 S.Ct. 338, 340-41, 5 L.Ed.2d 329 (1961); Flick v. Blevins, 887 F.2d 778, 781-82 (7th Cir.1989), cert. denied, 495 U.S. 934, 110 S.Ct. 2179, 109 L.Ed.2d 508 (1990), while a testificandum writ grants custody over a prisoner for the purpose of providing testimony before a grand jury, Lach, 874 F.2d at 1548, in a civil case, Miles v. Evans, 591 F.Supp. 623, 625-26 (N.D.Ga.1984), or in a criminal case involving other defendants. United States v. Smith, 310 F.2d 121, 122 (4th Cir.1962). The government acknowledges that both it and the district court incorrectly designated the writ used here as a writ of habeas corpus ad prosequendum. Such errors in form, while regrettable, do not render a prisoner's transfer invalid so long as the writ expressly indicates that it was issued for a proper purpose. Gilmore v. United States, 129 F.2d 199, 202 (10th Cir.1942); see also Ford v. Carballo, 577 F.2d 404, 407 n. 1 (7th Cir.1978). The writ in this case indicated that it was issued to compel the defendants' presence before the grand jury--a proper purpose of a testificandum writ, Lach, 874 F.2d at 1548--and hence was not constitutionally defective.
 
 
 6
 The second irregularity regards the manner in which the government applied for the writ. The government stated in its writ application that it sought the writ for the purpose of producing Larkin and Bolduc for a scheduled lineup. This was improper, for at the time the government submitted the application, the grand jury had not yet ordered the defendants to participate in a lineup. Settled law provides that the grand jury has the sole authority to compel a witness to appear at a lineup, and that the government may not short-circuit the grand jury process by obtaining on its own motion a court order to compel such an appearance. In re Melvin, 546 F.2d 1, 4-5 (1st Cir.1976); see also United States v. Santucci, 674 F.2d 624, 628 (7th Cir.1982) (discussing and approving Melvin ), cert. denied, 459 U.S. 1109, 103 S.Ct. 737, 74 L.Ed.2d 959 (1983). The government, from all indications, planned first to bring the defendants before the grand jury, and then to ask the jury to compel them to participate in the lineup already scheduled for later in the day. In the application, however, it jumped the gun by focusing on the ultimate purpose underlying the writ--Larkin's and Bolduc's appearance in the lineup--rather than on the proper means by which that purpose could have been accomplished.
 
 
 7
 The government's casual approach and want of proper care in preparing the writ application is regrettable, see Santucci, 674 F.2d at 633 n. 4 (such errors cause delays, create avoidable issues on appeal, and cast doubt upon fairness of the grand jury process), but in the end does not impermissibly taint the defendants' transfer from Massachusetts to Wisconsin. Notwithstanding the fact that the application, by its terms, was sought for an improper purpose, the writ itself rests upon a proper purpose: to command the defendants' appearance before the grand jury. See In re Bolduc, Writ of Habeas Corpus Ad Prosequendum, Grand Jury No. 90-0085 (E.D.Wis. July 31, 1990). The defendants criticize the court for taking it upon itself to alter the writ's mandate, but significantly do not say how that action prejudiced their rights.
 
 
 8
 There is another reason for declining the defendants' suggestion that the lineup testimony should have been suppressed owing to any defects in the way in which the federal government obtained their custody in Wisconsin. The grand jury here, unlike the grand jury in Melvin, actually ordered Larkin and Bolduc to take part in the lineup. This vitiates the defendants' argument for suppression--an argument, as acknowledged by both defense counsel at argument, which rests upon the same foundation as the exclusionary rule. The "inevitable discovery" exception to the exclusionary rule provides that courts should not suppress illegally seized evidence if such evidence would inevitably have been discovered even absent police misconduct. Nix v. Williams, 467 U.S. 431, 441-48, 104 S.Ct. 2501, 2507-11, 81 L.Ed.2d 377 (1984); United States v. Rodriguez, 831 F.2d 162, 166-67 (7th Cir.1987), cert. denied, 485 U.S. 965, 108 S.Ct. 1234, 99 L.Ed.2d 433 (1988). The same principle applies to evidence obtained through questionable grand jury procedures. In United States v. Scott, 784 F.2d 787 (7th Cir.), cert. denied, 476 U.S. 1145, 106 S.Ct. 2257, 90 L.Ed.2d 702 (1986), for example, the government compelled a witness to provide fingerprints and handwriting samples pursuant to a grand jury subpoena that referred only to oral testimony. Although the government exceeded the scope of the subpoena, we held that suppression was not warranted because the government "would have eventually been able to obtain the evidence" with a valid subpoena. Id. at 793. The present case is closely analogous. Because the grand jury, when given the opportunity, ordered the defendants to take part in the lineup, the government would have eventually been able to obtain a valid writ through the proper procedures. The defendants do not contend that any defect related to the writ itself--including those we have not mentioned--or any of the consequences ensuing from the court's issuance thereof (e.g., the defendants' presence before the grand jury), affected the grand jury's decision to issue its lineup order. In this light, suppression of the lineup testimony is not warranted. Compare Scott, 784 F.2d at 793 and Santucci, 674 F.2d at 632 with Melvin, 546 F.2d at 4-5.
 
 B.
 
 9
 Larkin and Bolduc, in the alternative, maintain that the court should have suppressed the lineup testimony because the government denied their request to provide defense counsel at the lineup. It is axiomatic that the right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information or arraignment." Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality). Accordingly, had the lineup occurred after the grand jury indicted Larkin and Bolduc, the government without question would have been obliged to provide counsel, and its failure to do so would have abridged the sixth amendment and warranted suppression. United States v. Wade, 388 U.S. 218, 237-38, 87 S.Ct. 1926, 1937-38, 18 L.Ed.2d 1149 (1967). The lineup in this case, however, occurred approximately three months prior to Larkin's and Bolduc's indictment, and the right to counsel presumptively does not attach at pre-indictment lineups. Kirby, 406 U.S. at 688-89, 92 S.Ct. at 1881-82; Hall v. Lane, 804 F.2d 79, 81-83 (7th Cir.1986), cert. denied, 480 U.S. 921, 107 S.Ct. 1382, 94 L.Ed.2d 696 (1987). A defendant may rebut this presumption by demonstrating that, despite the absence of formal adversary judicial proceedings, "the government had crossed the constitutionally significant divide from fact-finder to adversary." Hall, 804 F.2d at 82; cf. Bruce v. Duckworth, 659 F.2d 776, 783 (7th Cir.1981) (suggesting that government may not intentionally delay formal charges for purpose of holding lineup outside presence of defense counsel), cert. denied, 455 U.S. 955, 102 S.Ct. 1464, 71 L.Ed.2d 673 (1982). But Bolduc and Larkin make no showing that the government crossed that line here--indeed, any such suggestion is belied by the fact that the indictments followed the lineup by three months.
 
 
 10
 Despite our holding, we reiterate our previously stated view that the government, notwithstanding the absence of constitutional compulsion, should make every effort to provide counsel to custodial defendants appearing in pre-indictment lineups. Hall, 804 F.2d at 81; accord United States v. Gidley, 527 F.2d 1345, 1352 (5th Cir.1976), cert. denied, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976). The presence of defense counsel is always preferred, particularly where most or all of the inculpatory evidence consists of eyewitness testimony delivered by witnesses who previously participated in the lineup at issue. See Moore v. Illinois, 434 U.S. 220, 224-26, 98 S.Ct. 458, 462-64, 54 L.Ed.2d 424 (1977) (defense counsel may help avoid the potential hazards of lineup identification). We have scoured the record, and can find no valid reason why Bolduc's and Larkin's request for counsel was not satisfied. In light of the overwhelming importance of eyewitness testimony in this case, the government would have best served justice by affording the defendants the assistance of counsel at the lineup. It bears repeating that "counsel can hardly impede legitimate law enforcement; on the contrary ... law enforcement may be assisted by preventing the infiltration of taint...." Wade, 388 U.S. at 238, 87 S.Ct. at 1938; see also Moore, 434 U.S. at 235, 98 S.Ct. at 468.
 
 C.
 
 11
 Finally, Larkin alleges that the lineup procedures were so suggestive and unreliable as to violate due process. He focuses upon three aspects of the lineup, only two of which warrant our attention: first, the government exhibited a photo array--which included Larkin's picture--to several witnesses prior to the lineup; and, second, Larkin and Bolduc were the only two individuals in the lineup who spoke with Boston accents.
 
 
 12
 The admissibility of challenged identification testimony is governed by a two-part test. First, Larkin must demonstrate that the lineup identification procedures were unduly suggestive. If Larkin clears this threshold, suppression is warranted unless the identification, in view of the totality of the circumstances, was reliable enough to prevent a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 107-14, 97 S.Ct. 2243, 2249-53, 53 L.Ed.2d 140 (1977); Kubat v. Thieret, 867 F.2d 351, 357 (7th Cir.), cert. denied, 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989). We need not examine the first factor, for even assuming that the lineup procedures were unnecessarily suggestive, the bank employees' identification of Larkin, under the totality of the circumstances, was sufficiently reliable to withstand a due process challenge.
 
 
 13
 There are a number of factors bearing on the reliability of lineup identifications, including
 
 
 14
 the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.
 
 
 15
 Manson, 432 U.S. at 114, 97 S.Ct. at 2253; see also Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382-383, 34 L.Ed.2d 401 (1972). Although the lineup followed the two bank robberies by 10 and 26 months, respectively, other indicia of reliability overcome the lapse in time as well as the alleged defects in the lineup procedures. The record reflects that the witnesses had ample opportunity to view Larkin during the bank robberies. At trial, several testified that they had paid close attention to the perpetrators, and that, in light of the trauma caused by the robberies, they could not easily forget Larkin's physical features.
 
 
 16
 Moreover, it does not appear that the pre-lineup photo array, even if unduly suggestive, had any measurable impact upon the decision of those employees who identified Larkin. Of the four employees who viewed the photo array, one recognized both Bolduc and Larkin, one recognized only Bolduc, one recognized only Larkin, and one recognized neither. Precautions taken by the authorities ensured that these four witnesses did not influence any of the other seven witnesses at the lineup. The same holds true for the defendants' Boston accents. Only five of the eleven witnesses participating in the lineup positively identified Larkin. Of the five, only one indicated that her identification was based in part upon Larkin's accent, while another based her determination upon Larkin's facial features, posture and complexion. Two of the eleven witnesses refrained from making a positive identification of either defendant after hearing their voices, and two believed that the defendants had disguised their accents. Accordingly, while the lineup procedures were less than optimal, the totality of the circumstances overcomes any contention that the alleged defects in the lineup procedures rendered the lineup identifications so unreliable as to violate due process.
 
 II.
 
 17
 The defendants' remaining arguments warrant only brief attention. First, Larkin contends that the district court improperly denied his request to appoint an expert witness to testify about the undependability of eyewitness identification under stressful circumstances. Under Federal Rule of Evidence 702, a court may admit expert testimony if the witness is qualified as an expert, if the scientific or technical opinions offered are sufficiently reliable for presentation to the trier of fact, and if those opinions will assist the trier to better understand the evidence at issue in the case. United States v. Smith, 869 F.2d 348, 351-52 (7th Cir.1989). Trial courts have broad discretion over whether to admit or exclude such evidence, and their rulings will be upheld absent an abuse of that discretion. United States v. Davis, 772 F.2d 1339, 1343-44 (7th Cir.), cert. denied, 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985). Here, the court did not abuse its discretion. As we have previously explained, expert testimony regarding the potential hazards of eyewitness identification--regardless of its reliability--"will not aid the jury because it addresses an issue of which the jury already generally is aware, and it will not contribute to their understanding" of the particular factual issues posed. United States v. Hudson, 884 F.2d 1016, 1024 (7th Cir.1989), cert. denied, 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990). These hazards are well within the ken of most lay jurors, and Larkin's counsel was granted ample opportunity at trial to discuss those hazards and cast doubt upon the witnesses' eyewitness identification of his client. Accordingly, the court's decision not to appoint the expert witness requested by Larkin was proper.
 
 
 18
 Second, Larkin challenges the court's refusal to tender to the jury his proposed instructions regarding eyewitness identification. We have held that "where witness identification is an issue, the trial judge must, at the defendant's request, instruct the jury about eyewitness identification testimony." United States v. Anderson, 739 F.2d 1254, 1258 (7th Cir.1984). Here, the district court adequately fulfilled its duty. While the court tendered its own eyewitness identification instructions rather than those requested by Larkin, the two sets of instructions covered all of the same bases; in fact, the court's instructions were more comprehensive than Larkin's. The instructions ultimately tendered focused "the jury's attention on the reliability of the witness identifications and ... acquaint[ed] the jury with factors relevant in evaluating those identifications." Id. at 1258. As such, they were sufficient.
 
 
 19
 Third, both Larkin and Bolduc challenge the sufficiency of the evidence underlying their convictions. They face a heavy burden, for we must deny their challenge if, "after viewing the evidence in the light most favorable to the government, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Pritchard, 745 F.2d 1112, 1122 (7th Cir.1984) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). As noted, the convictions here rested almost entirely upon the eyewitness testimony of several bank employees present during the armed robberies. The defendants, pointing to the vagaries of eyewitness identification in general and in this particular case, assert that no rational trier of fact could have found them guilty in light of government's nearly complete reliance upon the employees' testimony. While we decline to endorse the government's suggestion that the inculpatory evidence in this case was "overwhelming," the dearth of physical evidence does not render Larkin's and Bolduc's convictions constitutionally deficient. See United States v. Duarte, 950 F.2d 1255, 1259 (7th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992). A number of witnesses identified Bolduc and Larkin as the perpetrators of the armed robberies, and the jury credited their testimony in the face of the defendants' alibis and counsels' challenges to the reliability thereof. We cannot say that their decision to do so was unreasonable. Cf. Wright v. West, --- U.S. ----, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992).
 
 
 20
 Finally, Larkin appeals his sentence. The district court sentenced him to two concurrent 90-month terms on the armed robbery counts, and to consecutive terms of 60 months and 240 months on both firearm counts, respectively. Larkin contends that the court should not have imposed consecutive terms for the firearm counts because they arise from the same transactions as the armed robbery counts. He relies exclusively upon Simpson v. United States, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), which held that Congress did not intend to authorize consecutive sentences for armed robbery and use of a firearm during that same robbery. As we explained in United States v. Harris, 832 F.2d 88, 90-91 (7th Cir.1987), however, Congress amended the relevant statutes after Simpson to expressly provide for consecutive sentences under these circumstances. This defeats Larkin's challenge to his sentence.
 
 
 21
 * * *
 
 
 22
 Bolduc's contention that his trial counsel rendered ineffective assistance of counsel is without merit. We thank all counsel for their excellent presentations at oral argument, and defense counsel for their able briefing.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable Milton I. Shadur, of the Northern District of Illinois, sitting by designation