Andre J. TWITTY, Plaintiff,

v.

John ASHCROFT, et al., Defendant.

Case No. 3:04cv410 (DFM).

United States District Court, D. Connecticut.

April 22, 2009.

Craig A. Raabe, Jeffrey J. White, Robinson & Cole, Hartford, CT, Katherine S. Kayatta, Robinson & Cole, LLP, Boston, MA, for Plaintiff.

Neil D. Parille, Attorney General's Office, Hartford, CT, Alan M. Soloway, U.S. Attorney's Office, New Haven, CT, for Defendant.

*RULING ON PLAINTIFF'S APPLI-CATION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM*

DONNA F. MARTINEZ, United States Magistrate Judge.

In the sole claim remaining in this case, the plaintiff, a federal inmate, alleges that the defendant, a Connecticut Department of Correction employee, used excessive force in violation of the Eighth Amendment. The case is trial ready.[1] The plaintiff now moves for a writ of habeas corpus *ad testificandum* pursuant to 28 U.S.C.

§ 2241(c)(5)[2] requesting that the Bureau of Prisons ("BOP") transport him from Colorado, where he is now incarcerated, to Connecticut to attend his civil trial.[3] (Doc. # 96.) In the alternative, the plaintiff requests that he be permitted to appear at trial via videoconference. The BOP[4] opposes the plaintiff's motion for a writ of habeas corpus *ad testificandum* but consents to the plaintiff's alternative request to appear at trial via videoconference. (Doc. # 103.)

I. *Legal Standard*

 It is well settled that a plaintiff prisoner does not have a constitutional right to be physically present at the jury trial of his civil rights claim. *See, e.g., Thornton v. Snyder,* 428 F.3d 690, 697 (7th Cir.2005); *Hernandez v. Whiting,* 881 F.2d 768, 770 (9th Cir.1989); *Am. Inmate Paralegal v. Cline,* 859 F.2d 59, 62 (8th Cir. 1988); *Poole v. Lambert,* 819 F.2d 1025, 1028 (11th Cir.1987); *Bacon v. United States,* No. 9:01–CV–1688, 2007 WL 778412, at *1 (N.D.N.Y. Mar. 13, 2007); *Story v. Robinson,* 531 F.Supp. 627, 630 (D.C.Pa.1982). "[R]ather, the district court has discretion to determine whether a prison inmate can attend court proceedings in connection with an action initiated by the inmate." *Thornton,* 428 F.3d at 697. *See Atkins v. City of New York,* 856

---

1. On May 5, 2008, the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. # 69.)

2. 28 U.S.C. § 2241(c)(5) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless ... [i]t is necessary to bring him into court to testify or for trial." As distinguished from a *"prosequendum* writ [which] permits the government to remove a prisoner to the proper jurisdiction for prosecution," a *"testificandum* writ grants custody over a prisoner for the purpose of providing testimony." *United States v. Larkin,* 978 F.2d 964, 968 (7th Cir.1992). *See Greene v. Prunty,*

938 F.Supp. 637, 638 (S.D.Cal.1996) (purpose of a writ of habeas corpus *ad testificandum* "is to direct the custodian of a prisoner to produce the prisoner for appearance as a witness in court.")

3. This written opinion documents the court's oral ruling issued on March 25, 2009.

4. The court invited the BOP and the Warden of the facility in which the plaintiff is incarcerated to file a response to the plaintiff's request. (Doc. # 97.)

F.Supp. 755, 757 (E.D.N.Y.1994) ("The decision to issue a writ of habeas corpus *ad testificandum* is committed to the sound discretion of the district court.") In assessing an inmate's request to attend a civil action, "the trial court must weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner." *Thornton,* 428 F.3d at 697. *See Barnes v. Black,* 544 F.3d 807, 810 (7th Cir.2008)(Posner J.)(" 'Writting' prisoners to a distant court entails cost and even danger.") In determining whether it should issue a writ of habeas corpus ad *testificandum,* the district court considers such factors as whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted and whether reasonable alternatives to the inmate's attendance exist which would satisfy the needs of the litigants. *See Ballard v. Spradley,* 557 F.2d 476, 480 (5th Cir.1977); *Haywood v. Hudson,* No. CV–90–3287, 1993 WL 150317, at *1 (E.D.N.Y. Apr. 23, 1993); *Miles v. Evans,* 591 F.Supp. 623, 625 (D.C.Ga.1984).

## II. *Discussion*

The plaintiff is incarcerated at the United States Penitentiary, Administrative Maximum ("ADX"), in Florence, Colorado. He is currently serving a sentence of 180 months having been convicted of wilfully communicating a threat in violation of 18 U.S.C. § 844(e) and threatening federal law enforcement officers and their families in violation of 18 U.S.C. § 115(a)(1)(A). His scheduled release date is 2013. (United States District Court for the Northern District of Georgia Atlanta Division, Case No. 1:98–CR–0374.)

The plaintiff's motion simply contains his request; it is devoid of legal analysis or facts. The BOP opposes the plaintiff's request to be transported to Connecticut for his civil trial on the grounds of security and expense.

In support of its opposition, the BOP submitted the declaration of Gary Dorsey ("Dorsey"), the Chief Deputy U.S. Marshal for the District of Connecticut. Dorsey states that if the plaintiff were transported from Colorado, he likely would be housed during the trial, for security reasons, at the Donald W. Wyatt ("Wyatt") Detention Facility in Rhode Island, which would require that he be driven back and forth from Hartford to Rhode Island each day of trial. (Dorsey Decl. ¶ 7.)

The BOP also offered the declaration of Harvey Church ("Church"), the Complex Captain at the Federal Correctional Complex ("FCC") in Florence, Colorado. Church oversees the correctional services departments at each of four facilities which comprise the FCC, including the facility in which the plaintiff is housed. (Church Decl. ¶ 3.) He is the "resident expert on all custodial and security questions arising at the four facilities." (Church Decl. ¶ 3.) Church avers that the ADX, where the plaintiff is housed, is the "most secure prison in the federal system, housing maximum custody sentenced inmates in single occupancy cells" and that it "is the only facility of its type in the Bureau." (Church Decl. ¶ 10.) The plaintiff "has a significant history of violent and disruptive behavior during his incarceration in the Federal Prison System" and has "received numerous disciplinary reports for threatening staff and other law enforcement officers" and "assaults on staff." (Church Decl. ¶ 6.) According to Church, "it would be extremely dangerous to transfer [the plaintiff] to the District of Connecticut for

even a brief period of time.... Not only is [the plaintiff] an extreme escape risk but he has shown the propensity to engage in violent and disruptive behavior. He is very difficult to manage and he is assaultive toward staff." (Church Decl. ¶ 12.) As to the expense of transporting the plaintiff, Church states that it would cost about $70,000 to transport the plaintiff to and from the District of Connecticut for trial. (Church Decl. ¶ 13.) Finally, Church states that the ADX has videoconferencing · technology and that inmates there "have participated in civil trials and evidentiary hearings via video-conferencing on several occasions." (Church Decl. ¶ 14.)

██ The importance of presenting live testimony in court weighs in favor of the plaintiff's request. However, there is unrefuted evidence in the record as to the significant costs to the BOP to transport the plaintiff from Colorado to Connecticut. In addition, there are grave and intractable security concerns involved with transporting and holding the plaintiff during trial. If the plaintiff were brought to Connecticut, he would be housed in Wyatt, a less secure facility than ADX. Transporting the plaintiff between Wyatt and the courthouse (a trip of 80 miles in each direction) and supervising him during the trial will require the assistance of multiple Marshals and presents a risk of escape, of harm to law enforcement officers and a danger to the public. Alternatives to the plaintiff's physical attendance exist. He is represented by able counsel and the ADX has offered to permit the plaintiff to appear at his trial via videoconference. Although videoconferencing is not the same as actual physical presence, it is a reason-

able alternative in these circumstances.[5] On the record before the court, the court finds that expense and security concerns outweigh the plaintiff's interest in physically appearing at trial, particularly in light of the availability of a reasonable alternative, that of having the plaintiff appear by videoconference. *See Thornton v. Snyder*, 428 F.3d 690 (7th Cir.2005) (district court did not abuse its discretion by conducting trial of inmate's § 1983 action against corrections officials by videoconference in light of the high security and escape risk plaintiff posed); *Jordan v. Pugh*, 484 F.Supp.2d 1185, 1187 (D.Colo.2007) (denying ADX inmate's writ of habeas corpus *ad testificandum*, holding that his "rights can be adequately protected through his appearance at trial by video"); *Edwards v. Logan*, 38 F.Supp.2d 463 (W.D.Va.1999) (prisoner's § 1983 jury trial would be conducted via videoconference based on considerations of security and expense).

### III. *Conclusion*

For these reasons, the plaintiff's application for a writ of habeas corpus testificandum is denied. The plaintiff's request in the alternative that he be permitted to appear at trial via videoconference is granted.

---

**5.** Federal Rule of Civil Procedure 43(a), which governs the taking of testimony at a civil trial, provides that "[f]or good cause in compelling circumstances and with appropri- ate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."